UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAREN CRAWFORD,

                              Plaintiff,

           -v-

BRONX COMMUNITY COLLEGE, PURYSABEL
UREGAR, ALAN FUENTES, and MARTA CLARK,

                              Defendants.

CIVIL ACTION NO.: 22 Civ. 1062 (PGG) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE PAUL G. GARDEPHE**, United States District Judge:

## I.    INTRODUCTION

Pro se Plaintiff Caren Crawford ("Ms. Crawford") asserts claims under the Rehabilitation

Act of 1973, 29 U.S.C. §§ 701, et seq. (the "Rehabilitation Act"); the Americans with Disabilities

Act of 1990, 42 U.S.C. §§ 11201, et seq. (the "ADA"); the Family and Medical Leave Act of 1993,

29 U.S.C. §§ 2601, et seq. (the "FMLA"); the New York State Human Rights Law, N.Y. Exec.

L. §§ 290, et seq. (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin.

Code §§ 8-101, et seq. (the "NYCHRL") against her former employer, Defendant Bronx

Community College (the "College"), and individual Defendants Purysabel Uregar ("Ms. Uregar"),

Alan Fuentes ("Mr. Fuentes"), and Marta Clark ("Ms. Clark") (collectively, "Defendants").  (ECF

No. 2 (the "Complaint")).  Ms. Crawford alleges that, after she broke her ankle, Defendants failed

to accommodate her with short-term disability leave and unlawfully terminated her because of

her disability and in retaliation for attempting to take leave.  (Id. at 9–13).

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted.  (ECF No. 34 (the "Motion")).  Ms. Crawford opposes the Motion.  (ECF No. 41 (the "Opposition")).[1]

For the reasons set forth below, the Court respectfully recommends that Defendants' Motion be GRANTED IN PART and DENIED IN PART.

## II.    BACKGROUND

### A.  Factual Background

The following facts are drawn from Ms. Crawford's allegations in the Complaint, which the Court presumes to be true for purposes of deciding the Motion, and the documents submitted together therewith.  See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC, 709 F.3d 109, 119 (2d Cir. 2013); Stolarik v. New York Times Co., 323 F. Supp. 3d 523, 529 n.2 (S.D.N.Y. 2018).[2]  Given Ms. Crawford's pro se status, the Court considers additional factual allegations she asserts in the Opposition, to the extent that they are consistent with the allegations in the Complaint.  (ECF No. 41 at 1).  See Lobaito v. Chase Bank, No. 11 Civ. 6883 (PGG), 2012 WL 3104926, at *2 (S.D.N.Y. July 30, 2012) (explaining that "factual allegations made in a pro se opposition memorandum, where they are consistent with those in the complaint, may also be considered on a motion to dismiss"), aff'd, 529 F. App'x 100 (2d Cir. 2013) (summary order).  The Court also considers the "Fitness for Duty Certification" that Defendants attach to the Motion (ECF No. 36-1 at 2), as it is incorporated by reference in, and integral to, the

---

[1] Ms. Crawford prepared the Opposition with assistance from the New York Legal Assistance Group ("NYLAG").  (Id. at 1 n.1; ECF No. 38).

[2] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

Complaint and Ms. Crawford does not dispute its authenticity. (ECF No. 2 at 10–11, 13 ¶¶ 4, 6, 15; id. at 15). See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (explaining that it is proper to consider documents incorporated by reference in the complaint if there is no dispute regarding their authenticity); Pac. Life Ins. Co. v. U.S. Bank N.A., No. 16 Civ. 555 (PGG), 2022 WL 11305628, at *19 n.26 (S.D.N.Y. Oct. 19, 2022) (considering such documents in the absence of a dispute as to authenticity).

### 1. Ms. Crawford's employment

In October 2017, Ms. Crawford began working as an office assistant for the College. (ECF No. 2 at 9 ¶ 1). Ms. Crawford worked full time, averaging 37.5 hours per week. (ECF No. 41 at 3).

### a. Ms. Crawford's injury

On April 17, 2019, Ms. Crawford fell down the stairs at Grand Central Terminal on her way to work. (ECF No. 2 at 9 ¶ 2). After receiving emergency medical attention, Ms. Crawford was transported by ambulance to a hospital emergency room (the "ER"), where she was diagnosed with a broken ankle. (Id.)

While waiting in the ER, Ms. Crawford sent a text message to her supervisor, Mr. Fuentes, to inform him that she had fallen down the stairs. (ECF No. 2 at 9 ¶ 2). She was released from the ER with a "boot and cane." (Id.) The ER physician told her to "stay off [her] foot and keep it elevated and iced," and instructed her to "come back to the hospital [two] weeks later to determine how [she] was doing." (Id.)

On being released from the ER, Ms. Crawford sent another text message to Mr. Fuentes and to "the staff" to inform them that she would be out of the office from April 17 to April 19,

2019 due to the injury.  (ECF No. 2 at 9 ¶ 2).  This second text message included a photograph of her foot in the boot.  (Id.)

### b.  Ms. Crawford's attempts to take leave

Ms. Crawford "call[ed] out sick" from work on April 22–24, 2019, and texted Mr. Fuentes each day to inform him.  (ECF No. 2 at 9 ¶ 3).  After Ms. Crawford had been out of work for five consecutive days, she was "instructed" to contact the College's human resources department ("HR").  (Id.)  On April 26, 2019, Ms. Crawford contacted Rosa Mateo ("Ms. Mateo"), a timekeeper in HR, to "let her know that [she] had suffered an accident and had been out []sick[,] but wanted to use [her] accrued sick time and/or vacation time."  (Id. at 10 ¶ 3).  Ms. Crawford asked Ms. Mateo how much time she had accrued and how to transmit her timesheets.  (Id.)  Ms. Crawford also asked Ms. Mateo how to apply for temporary disability leave.  (Id.)  Ms. Mateo told Ms. Crawford that she could use her accrued time "while [she] figured out the kinds of leave for which [she] would be eligible," and forwarded Ms. Crawford's communication to Keisha Cox ("Ms. Cox"), Belkis Soler ("Ms. Belkis"), and Ms. Uregar.  (Id. at 10 ¶ 4).[3]  Ms. Crawford was "not told in a timely fashion whether [she] had any accrued time even after being told [she] could use that [time] to call out sick."  (Id. at 13 ¶ 15).

On April 29, 2019, Ms. Uregar emailed Ms. Crawford three documents:  (1) "a request for FMLA" (the "FMLA Request Form"), (2) a certification to be completed by a physician (the "Doctor's Certification"), and (3) "a fitness for duty certification that also needed to be filled out by a physician" (the "Fitness for Duty Certification").  (ECF No. 2 at 10 ¶ 4).  Ms. Uregar "did not explain why [Ms. Crawford] received these documents," so Ms. Crawford "read all the documents

---

[3] Ms. Uregar is an "HR Benefits Specialist."  (Id. at 11 ¶ 8).

to determine which ones applied to [her] situation." (Id.) Ms. Uregar indicated that, by May 10, 2019, Ms. Crawford was required to submit the completed FMLA Request Form. (Id.) At the time Ms. Crawford received the forms, "[t]he soonest appointment [she] could schedule with a primary [care] physician was after Friday, May 10[, 2019]." (Id.)

On May 8, 2019, Ms. Cox emailed Ms. Crawford stating that Ms. Crawford "needed to submit [her] time[]sheets[] or [her] pay would be interrupted." (ECF No. 2 at 10 ¶ 5). Ms. Crawford then "filled out, downloaded, signed, scanned, and emailed the [five] time[]sheets to [Ms. Cox] and [Mr. Fuentes] for their signatures." (Id.) Ms. Crawford "never received proof that they were signed, and [she] never received another pay[]check." (Id.) On May 10, 2019, Ms. Cox emailed Ms. Crawford and Mr. Fuentes asking for the last day Ms. Crawford had worked. (Id.)

Because Ms. Crawford was unable to have a physician complete the Doctor's Certification and Fitness for Duty Certification by May 10, 2019, she requested an extension of time to do so. (ECF No. 2 at 10 ¶ 6). Ms. Crawford was permitted to return the completed forms by May 13, 2019. (Id.)

On May 14, 2019—one day after the extended deadline to submit the completed forms— Ms. Crawford met with a primary care physician who completed the Fitness for Duty Certification, stating that she was able to return to work "with restrictions" on May 29, 2019, and could work "without restrictions" on June 12, 2019. (ECF No. 2 at 10–11 ¶ 6). The same day, Ms. Crawford submitted the Fitness for Duty Certification, which she contends "provid[ed] notice of [her] need for an accommodation of extended leave and then modified duty." (Id. at 11 ¶ 7).

On May 22, 2019, Ms. Crawford met with Ms. Uregar. (ECF No. 2 at 11 ¶ 8). In the "public reception area," Ms. Crawford provided Ms. Uregar with "a copy of the ER release notes" and

"doctor's notes"—including the completed Fitness for Duty Certification—and "asked if [she still] needed to submit the "FMLA forms." (Id.) Ms. Uregar told Ms. Crawford that she was "considered on unauthorized leave because the FMLA paper[]work was not completed," and that she would be "dropped from the payroll without them getting those forms." (Id.) Ms. Crawford told Ms. Uregar that she was "confused because the FMLA request form states [that] it must be filled out before leave was needed, so [she] did not think that applied to [her] situation." (Id. at 11 ¶ 9). Ms. Uregar asked Ms. Crawford why she had not come to work, and Ms. Crawford showed Ms. Uregar the "ER report of what happened" and told Ms. Uregar that she "needed to elevate and ice [her] foot to aid [in the] healing process." (Id.) Ms. Uregar told Ms. Crawford that she would not be paid until she submitted the forms. (Id.) This was the first time Ms. Crawford was told "that an FMLA form was required for authorized leave." (ECF No. 41 at 2).

On May 24, 2019, two days later, Ms. Crawford visited the hospital and was told that she "needed to make a request through their Medical Records/Correspondence Department to see a doctor who could fill out the FMLA forms." (ECF No. 2 at 11 ¶ 10). On May 26, 2019, Ms. Crawford submitted the request, and was told that "the process would take [ten] days, after which [she] would receive signed copies of the forms in the mail." (Id. at 11–12 ¶ 10).

### c.  Ms. Crawford's return to work

On May 29, 2019, Ms. Crawford reported to work per the Fitness for Duty Certification indicating that she could work "with restrictions" as of that date. (ECF No. 2 at 10–12 ¶¶ 6, 11; see ECF No. 41 at 2). Mr. Fuentes stopped Ms. Crawford from working, and told her that she would need to be "cleared" by HR to return to work. (ECF Nos. 2 at 12 ¶ 11; 41 at 2). Mr. Fuentes called HR and directed Ms. Crawford to meet with HR. (ECF No. 2 at 12 ¶ 11). Once Ms. Crawford

arrived at HR, a "Campus Security Officer" (the "Officer") arrived at HR and asked for Ms. Crawford.  (Id.)  Ms. Crawford identified herself to the Officer, who indicated he would wait for Ms. Crawford to finish her meeting with HR.  (Id.)

Ms. Clark escorted Ms. Crawford to a meeting with Ms. Uregar.  (ECF No. 2 at 12 ¶ 12).  Ms. Uregar "recited many of the same things [Ms. Crawford] had already been told about being on unauthorized leave[,] and asked [Ms. Crawford] 'why [she had] not come into work.'"  (Id.)  Ms. Uregar told Ms. Crawford that Ms. Crawford "needed some special help (psychological) because it was 'abnormal' for [Ms. Crawford] to just 'show up' suddenly for work after being out so long."  (Id.)  Ms. Uregar gave Ms. Crawford a pamphlet "providing advice for receiving emotional support."  (Id.)  Ms. Uregar gave Ms. Crawford "a letter extending [her] FMLA form deadline by two days to May 31[, 2019], even though [she] had already submitted those forms to the hospital and had no control over when [she] would receive the signed copies."  (Id.)  After the meeting, which lasted 15–20 minutes, Ms. Crawford "was escorted off campus, by car, with [three] campus security officers[, who] dropped [her] off at the nearest public bus stop."  (Id.)

On June 12, 2019, Ms. Crawford received copies of the signed "FMLA forms" in the mail from the hospital.  (ECF No. 2 at 12 ¶ 13).  Ms. Crawford "immediately" emailed the forms to Ms. Uregar.  (Id.; see id. at 13 ¶ 15).  On June 13, 2019, Ms. Uregar emailed Ms. Crawford asking her "why it took so long to receive the forms."  (Id. at 12 ¶ 13).  Ms. Crawford told Ms. Uregar that "the process with the hospital takes two weeks," and emailed Ms. Uregar a copy of the form that the hospital provided to her that "explained their process."  (Id.; id. at 11–12 ¶ 10).  Ms. Crawford asked Ms. Uregar "what [her] next steps would be."  (Id. at 12 ¶ 13).  Ms. Crawford "followed up

via email on June 14[], 2019," but does not allege that she received a response from Ms. Uregar. (Id. at 13 ¶ 15).

### d. Ms. Crawford's termination

On July 9, 2019, Ms. Crawford received a termination letter from Ms. Clark. (ECF No. 2 at 13 ¶ 14) (the "Termination Letter").  The stated reason for the termination was "[j]ob [a]bandonment." (Id.)  Ms. Crawford reached out to her union to determine whether she had "any recourse," and she was told by her union representative that "since [she] was terminated[,] the union could not help [her]." (Id.)  Ms. Crawford "had no intention of abandoning [her] job," and characterizes the termination as being "out of the blue." (Id. at 13 ¶ 15).  Ms. Crawford states that her "timely" submission of the Fitness for Duty Certification, her submission of the remaining forms by June 12, 2019, her follow-up email on June 14, 2019, and her "multiple contacts and visits to [the] jobsite" support that she did not intend to abandon her job. (Id.)  Ms. Crawford was terminated "despite [her] best efforts to consistently communicate with [the College] about her disability and provide them with necessary documentation." (ECF No. 41 at 2).  Ms. Crawford believes that her termination was the product of disability discrimination, and that Defendants failed to accommodate her disability. (ECF No. 2 at 13 ¶ 15).

### B. Procedural Background

On March 9, 2020, Ms. Crawford file a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the New York City Commission on Human Rights. (ECF No. 2 at 6, 14–15).  On November 8, 2021, the EEOC issued a Notice of Right to Sue, which Ms. Crawford received "near that time." (Id. at 6, 16).

On February 7, 2022, Ms. Crawford filed the Complaint.  (ECF No. 2).  On November 22, 2022, Defendants filed the Motion.  (ECF No. 34).  On May 2, 2023, Ms. Crawford filed the Opposition.  (ECF No. 41).  On May 23, 2023, Defendants filed a reply (ECF No. 44 (the "Reply")).

### III.  DISCUSSION

#### A.  Legal Standard for Motion to Dismiss

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff.  See N.J. Carpenters Health Fund, 709 F.3d at 119; Blackson v. City of N.Y., No. 14 Civ. 452 (VEC), 2014 WL 6772256, at *2 (S.D.N.Y. Dec. 2, 2014).  "[T]he Court must assess whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  Blackson, 2014 WL 6772256, at *2 (quoting Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014)).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see Malloy v. Pompeo, No. 18 Civ. 4756 (PGG), 2020 WL 5603793, at *8 (S.D.N.Y. Sept. 18, 2020) (quoting Iqbal, 556 U.S. at 678).  A complaint "cannot withstand a motion to dismiss unless it contains factual allegations sufficient to raise a 'right to relief above the speculative level.'"  Blackson, 2014 WL 6772256, at *2 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.

"It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau

of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). Courts undertake to "ensure that inexperienced pro se litigants do not inadvertently forfeit rights or winning arguments," Tartt v. City of N.Y., No. 12 Civ. 5405 (VEC), 2014 WL 3702594, at *2 (S.D.N.Y. July 16, 2014), and therefore apply "a more flexible standard to evaluate the[] sufficiency [of pro se complaints] than . . . when reviewing a complaint submitted by counsel." Lerman v. Bd. of Elections in City of N.Y., 232 F.3d 135, 140 (2d Cir. 2000); see Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"). Pro se litigants who assert civil rights claims deserve "particularly solicitous" consideration from the Court. Tracy v. Freshwater, 623 F.3d 90, 102 (2d Cir. 2010).

### B. Discrimination Claims[4]

Ms. Crawford alleges that Defendants discriminated against her on the basis of her purported disability—her broken ankle—in violation of the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL. (ECF No. 2 at 4–5, 9–13). Specifically, Ms. Crawford alleges that Defendants terminated her for having a disability and failed to accommodate her disability. (Id.)

#### 1. Legal standards

##### a. Burden-shifting framework

Ms. Crawford's discrimination claims are evaluated under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Modica v. N.Y.C. Dep't of

---

[4] Defendants do not argue that any claims are untimely or were not administratively exhausted. (See ECF Nos. 34–35, 44). These arguments have arguably been waived, and the Court therefore presumes that all claims are timely and were properly exhausted as necessary. See, e.g., Vail v. City of New York, No. 18 Civ. 11822 (VEC) (SLC), 2020 WL 2548074, at *6 (S.D.N.Y. May 15, 2020) (presuming proper exhaustion where defendant did not argue in its motion to dismiss that plaintiff failed to exhaust administrative remedies), adopted in relevant part by, 2020 WL 3547736 (S.D.N.Y. June 30, 2023).

Educ., No. 20 Civ. 4834 (JMF), 2021 WL 3408587, at *5 (S.D.N.Y. Aug. 4, 2021) (applying

McDonnell Douglas burden-shifting framework to the ADA, the Rehabilitation Act, the NYSHRL,

and the NYCHRL).    To ultimately succeed under this framework, "a plaintiff must first

demonstrate a prima facie case of employment discrimination by showing that: '(1) she was

within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse

employment action; and (4) the adverse action occurred under circumstances giving rise to an

inference of discrimination.'"    Harris v. N.Y.C. Human Res. Admin., No. 20 Civ. 2011 (JPC), 2021

WL 3855239, at *6 (S.D.N.Y. Aug. 27, 2021) (quoting Farmer v. Shake Shack Enters., LLC, 473 F.

Supp. 309, 324 (S.D.N.Y. 2020) (quoting Menaker v. Hofstra Univ., 935 F.3d 20, 30 (2d Cir. 2019))).

"[O]nce a plaintiff produces minimal evidentiary support for the claim of discriminatory

motivation, the burden of production shifts to the employer to articulate a non-discriminatory

reason for the adverse employment action."    Davis v. N.Y.C. Dep't of Educ., 804 F.3d 231, 235 (2d

Cir. 2015).    "But once the employer has set forth its non-discriminatory justification, the plaintiff

must then produce evidence capable of carrying the burden of persuasion that the employer's

action was at least in part motivated by discrimination."    Id.    "If a plaintiff can meet the initial

burden of showing a prima facie case, 'the burden then shifts to the defendant to offer a

legitimate nondiscriminatory reason for the [adverse employment action].  If the defendant does

so, the burden returns to the plaintiff to show that the real reason for [the adverse employment

action] was' her membership in a protected class."    Boatright v. U.S. Bancorp, No. 18 Civ. 7293

(LJL), 2020 WL 7388661, at *14 (S.D.N.Y. Dec. 16, 2020) (citing Ruiz v. Cnty. of Rockland, 609 F.3d

486, 491–92 (2d Cir. 2010)).

To survive a motion to dismiss, however, a plaintiff "is not required to plead a <u>prima facie</u> case under <u>McDonnell Douglas</u>." <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 84 (2d Cir. 2015); <u>see</u> <u>Chalmers v. City of N.Y.</u>, No. 20 Civ. 3389 (AT), 2021 WL 4226181, at *3 (S.D.N.Y. Sept. 16, 2021) ("the elements of a <u>prima facie</u> case 'provide an outline of what is necessary' to render such claims plausible") (quoting <u>Kassman v. KPMG LLP</u>, 925 F. Supp. 2d 453, 461 (S.D.N.Y. 2013)). Rather, a plaintiff only need "alleg[e] facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." <u>Vega</u>, 801 F.3d at 87. At the motion to dismiss stage, "the question is not whether a plaintiff is <u>likely</u> to prevail, but whether the well-pleaded factual allegations <u>plausibly</u> give rise to an inference of unlawful discrimination, <u>i.e.</u>, whether plaintiffs allege enough to 'nudge[] their claims across the line from conceivable to plausible.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570).

### b. The ADA, the Rehabilitation Act, and the NYSHRL

To plausibly plead a discrimination claim under the ADA, a plaintiff must allege "(1) h[er] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of h[er] job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of h[er] disability." <u>Smith v. N.Y.C. Dep't of Educ.</u>, No. 18 Civ. 8545 (PGG), 2019 WL 6307471, at *5 (S.D.N.Y. Nov. 22, 2019). The ADA applies a "but-for" causation standard. <u>Baluch v. 300 West 22 Realty, LLC</u>, No. 21 Civ. 9747 (JPO), 2023 WL 112547, at *3 (S.D.N.Y. Jan. 5, 2023). To plausibly plead an ADA claim under a failure-to-accommodate theory, a plaintiff must allege "(1) [s]he is a person with a disability under the meaning of the [ADA]; (2) an employer covered by the statute has notice of h[er] disability; (3) with reasonable accommodation, the employee could perform

the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  Smith, 2019 WL 6307471, at *9.

An individual is considered disabled within the meaning of the ADA if she has "a physical or mental impairment that substantially limits one or more [of her] major life activities," or she is "regarded as having such an impairment."  42 U.S.C. § 12102(1).  "Th[is] definition of disability [is to be] construed in favor of broad coverage."  42 U.S.C. § 12102(4)(A); see Dooley v. JetBlue Airways Corp., 636 F. App'x 16, 21–22 (2d Cir. 2015).  "To determine whether or not a plaintiff suffers from a disability, the Supreme Court compels district courts to follow a three-step process to conclude:  (1) whether plaintiff had an impairment; (2) whether the impairment affected a 'major life activity' within the meaning of the ADA; and (3) whether that major life activity was substantially limited by the impairment."  Baluch, 2023 WL 112547, at *4.  A plaintiff must plausibly allege facts sufficient to meet all three of these steps in order to avoid dismissal.  Id.

The ADA and Rehabilitation Act "impose identical requirements," and are therefore analyzed together at the pleadings stage.  Soto v. Marist Coll., No. 17 Civ. 7976 (KMK), 2019 WL 2371713, at *12 (S.D.N.Y. June 5, 2019) (quoting Rodriguez v. City of N.Y., 197 F.3d 611, 618 (2d Cir. 1999)) (collecting cases); see Smith, 2019 WL 6307471, at *6 ("[t]he same standard applies to disability discrimination claims under the Rehabilitation Act as under the ADA").[5]  Likewise, courts in this circuit analyze NYSHRL claims under the same standards as ADA claims.  See

_____

[5] While there are minor differences between the ADA and the Rehabilitation Act—such as "the Rehabilitation Act's limitation to denials of benefits 'solely' by reason of disability and its reach of only federal funded . . . entities" (id. at *6)—Defendants' arguments do not implicate those.  Accordingly, "where, as here, the subtle distinctions between the statutes are not implicated, courts treat the claims under the two statutes identically."  Langella v. Mahopac Cent. Sch. Dist., No. 18 Civ. 10023, 2022 WL 44776, at *5 (S.D.N.Y. Jan. 5, 2022).

Cornetta v. Town of Highlands, 434 F. Supp. 3d 171, 185 (S.D.N.Y. 2020) (collecting cases); Cruz v. City of N.Y., No. 21 Civ. 1999 (DLC), 2021 WL 5605139, at *6 (S.D.N.Y. Nov. 30, 2021) (same as to failure-to-accommodate claims).[6]

The legal standards for NYSHRL discrimination claims are "essentially the same" as under the ADA, "except to the extent that the NYSHRL has been interpreted to endorse a broader definition of 'disability.'" Zabar v. N.Y.C. Dep't of Educ., No. 18 Civ. 6657 (PGG), 2020 WL 2423450, at *5 n.6 (S.D.N.Y. May 12, 2020); see Frawley v. Med. Mgmt. Grp. of N.Y., Inc., No. 21 Civ. 8894 (VSB) (SLC), 2022 WL 17812697, at *7 (S.D.N.Y. Apr. 25, 2022) (holding that "NYSHRL disability discrimination claims are governed by the same legal standards as federal ADA claims" on a motion to dismiss); Arazi v. Cohen Bros. Realty Corp., No. 20 Civ. 8837 (GHW), 2022 WL 912940, at *6 (S.D.N.Y. Mar. 28, 2022) (on motion to dismiss, applying same standard of review to ADA and NYSHRL failure-to-accommodate claims). The NYSHRL defines a disability as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques." Grassel v. Dep't of Educ. of City of N.Y., No. 12 Civ. 1016 (PKC), 2015 WL 5657343, at *10 (S.D.N.Y. Sept. 24, 2015) (quoting N.Y. Exec. L. § 292(21)(a)). As the Second Circuit has held, "[f]airly read, the [NYSHRL] covers a range of conditions varying in degree from those involving the loss of a bodily function to those which are merely diagnosable medical anomalies which impair bodily integrity

---

[6] In August 2019, the NYSHRL was amended to "broaden its liability standards." Karupaiyan v. CVS Health Corp., No. 19 Civ. 8814 (KPF), 2021 WL 4341132, at *7 n.14 (S.D.N.Y. Sept. 23, 2021). The conduct alleged here pre-dates the amendment, which does not have retroactive effect. Id. (See ECF No. 2 at 13 ¶ 14 and 14 (last act of alleged discrimination occurred on July 9, 2019)).

and thus may lead to more serious conditions in the future."  Treglia v. Town of Manlius, 313 F.3d 713, 723 (2d Cir. 2002).  Unlike the ADA, the NYSHRL "does not require [plaintiffs] to identify a major life activity that is substantially limited by [their] impairment."  Id.

###### c.  **The NYCHRL**

The standard for unlawful employment practices is less burdensome for a plaintiff under the NYCHRL than under federal or (pre-amendment) state law.  See Karupaiyan, 2021 WL 4341132, at *8 (citing Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013)); see also N.Y.C. Admin. Code § 8-107.  For NYCHRL claims, a plaintiff need not show that any adverse employment action was "material," but rather must allege differential treatment that is "more than trivial, insubstantial, or petty."  Karupaiyan, 2021 WL 4341132, at *8; see also Mihalik, 715 F.3d at 110 (to state a claim for discrimination under the NYCHRL, "the plaintiff need only show differential treatment—that she is treated 'less well'—because of" a protected characteristic).  Failure-to-accommodate claims under the NYCHRL are generally evaluated under the same standard as under the ADA and NYSHRL, with the exception that "the NYCHRL presumes all accommodations to be reasonable until proven otherwise."  Arazi, 2022 WL 912940, at *6. The NYCHRL also has a broader definition of what constitutes a disability:  "any physical, medical, mental or psychological impairment, or a history or record of such impairment."  N.Y.C. Admin. Code § 8-102(16)(a).  These categories encompass "[a]n impairment of any system of the body; including, but not limited to, the neurological system; the musculoskeletal system; the special sense organs and respiratory organs, including, but not limited to, speech organs; the cardiovascular system; the reproductive system; the digestive and genito-urinary systems; the hemic and lymphatic systems; the immunological systems; the skin; and the endocrine system[]

or [a] mental or psychological impairment." Id.; see Arazi, 2022 WL 912940, at *7. As with the NYSHRL, the NYCHRL does not require "any showing that the disability substantially limits a major life activity." Id.

    2. **Application**

        a. **ADA and Rehabilitation Act discrimination claims**

As a threshold matter, the Court must determine whether Ms. Crawford has adequately alleged that her broken ankle constitutes a "disability" under federal law. (See § III(B)(1)(b), supra). The Court concludes that she has not.

Not every injury constitutes a disability under the ADA. "[T]emporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities. Such impairments may include, but are not limited to, broken limbs, sprained joints, concussions, appendicitis, and influenza." 29 C.F.R. 1630.2(j). "Courts within this circuit, and the vast majority of courts elsewhere, have held that temporary disabilities do not trigger the protections of the ADA because individuals with temporary injuries are not disabled persons within the meaning of the act." Fouad v. Jeport Hotel Corp., No. 01 Civ. 8502 (GBD), 2005 WL 1866329, at *2 (S.D.N.Y. Aug. 5, 2005).

Broken bones that are not alleged to have had long-term or permanent consequences are temporary impairments that do not qualify as disabilities under the ADA. See Zick v. Waterfront Comm'n of N.Y. Harbor, No. 11 Civ. 5093 (CM), 2012 WL 4785703, at *5 (S.D.N.Y. Oct. 4, 2012) (holding that "Plaintiff fail[ed] to plead that she suffer[ed] from a disability within the meaning of the ADA. Plaintiff's broken leg is simply not an injury considered a 'disability' under the ADA. Furthermore, Plaintiff has failed to allege that her injury was more than temporary, or that

complications arose from her injury"); <u>Morse v. City of N.Y.</u>, No. 00 Civ. 2528 (TPG), 2001 WL 968996, at *7 (S.D.N.Y. Aug. 24, 2001) (holding that, "[a]s stated in the guidelines, broken bones are usually not considered disabilities [under the ADA]. . . . The Court finds that [plaintiff's foot] fracture was not a disability under the ADA, and dismisses the claims . . .").

Ms. Crawford alleges that she broke her ankle in on April 17, 2019, was able to and did return to work with restrictions less than six weeks later, and was expected to be free of restrictions within eight weeks of the fracture. (ECF No. 2 at 9–11 ¶¶ 2, 6, 11). The Complaint does not allege that the broken ankle substantially limited any of Ms. Crawford's life activities after June 12, 2019, or that she continued to suffer from any limitation whatsoever after that date. (<u>See</u> ECF No. 2). Thus, her injury was of a temporary nature and so did not implicate the protections of the ADA or the Rehabilitation Act. <u>See</u> <u>Zick</u>, 2012 WL 2012 WL 4785703, at *5 (granting motion to dismiss ADA and Rehabilitation Act claims because broken leg was not a disability under federal law). Because her broken ankle was not a disability, Ms. Crawford therefore has not plausibly alleged a discrimination claim, whether premised on adverse employment action or a failure to accommodate, under the ADA or Rehabilitation Act.

Further, with respect to Ms. Crawford's ADA and Rehabilitation Act disability discrimination claims premised on adverse employment action, the Complaint does not plausibly allege that she was terminated <u>because</u> of her injury. The Complaint merely alleges that Ms. Crawford suffered an injury, took leave, requested additional leave, and was ultimately terminated. (<u>See</u> ECF No. 2, <u>passim</u>). Ms. Crawford does not allege that she was terminated <u>because</u> of her injury or any facts supporting that her termination was the product of disability-based discriminatory animus. The allegation that Ms. Crawford was "discriminated against by

[the] College on the basis of [her] disability" is conclusory.  (ECF No. 2 at 13 ¶ 15).  This is fatal to her claims at the pleading stage.  See Benson v. Westchester Med. Ctr., No. 20 Civ. 5076 (PMH), 2022 WL 2702544, at *10 (S.D.N.Y. July 12, 2022) ("[c]onclusory speculation is insufficient to plead but-for causation under either the ADA or Rehabilitation Act") (collecting cases); Holmes v. N.Y.C. Dep't of City Wide Admin. Servs., No. 14 Civ. 8289 (KBF), 2015 WL 1958941, at *5 (S.D.N.Y. Apr. 30, 2015) ("assuming arguendo that Holmes has adequately alleged that he has a disability within the meaning of the ADA (which, for the reasons set forth above, he has not), the complaint . . . [is] devoid of any factual detail that would permit this Court to infer that he was terminated from  DCAS because of his disability.   The complaint's  .  .  .  vague and conclusory assertions do not sufficiently allege the requisite causal nexus, which constitutes a separate and independent ground for dismissing Holmes' ADA claim . . ."); Clarke v. White Plains Hosp., No. 13 Civ. 5359 (CS), 2015 WL 13022510, at *6 (S.D.N.Y. Apr. 22, 2015) ("[e]ven if Plaintiff had adequately pleaded the disability element, any ADA claim would still fail because the allegations of discrimination are entirely conclusory and unsupported by any facts that would render those allegations plausible") (citing Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008)), aff'd, 650 F. App'x 73 (2d Cir. 2016) (summary order).

Accordingly, I respectfully recommend that Motion be GRANTED as to Ms. Crawford's ADA and Rehabilitation Act discrimination claims against the College.

### b.  **NYSHRL and NYCHRL discrimination claims**[7]

The Court finds that, as a threshold matter, the Complaint plausibly alleges that Ms. Crawford had a disability under the NYSHRL and NYCHRL.  The NYSHRL defines "disability" more broadly than the ADA, see Arazi, 2022 WL 912940, at *7:  any "physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function."  Grassel, 2015 WL 5657343, at *10 (quoting N.Y. Exec. L. § 292(21)(a)).  The Second Circuit has recognized that the NYSHRL protects persons with a "range of conditions varying in degree from those involving the loss of a bodily function to those which are merely diagnosable medical anomalies which impair bodily integrity."  Treglia, 313 F.3d at 723.  Under the NYCHRL, a disability is even broader:  "any physical, medical, mental or psychological impairment, or a history or record of such impairment."  Arazi, 2022 WL 912940, at *7 (quoting  N.Y.C. Admin. Code § 8-102(16)(a)).

Ms. Crawford alleges that she broke her ankle falling down the stairs, left the hospital in a medical boot and with a cane, could not "stand for prolonged periods of time or walk for prolonged periods of time," and required nearly two months to recover fully.

---

[7] The Court rejects Defendants' argument that Ms. Crawford abandoned her NYSHRL and NYCHRL disability discrimination claims by "failing to respond to Defendants' arguments" in her Opposition.  (ECF No. 44 at 5).  The Opposition states that "Defendants discriminated against Ms. Crawford based on her disability under . . . the NYSHRL[] and the NYCHRL."  (ECF No. 41 at 4).  Given Ms. Crawford's pro se status, the Court is not inclined to find that she has abandoned these claims despite her failure to address all of Defendants' arguments for dismissal.  See Rosen v. N.Y.C. Dep't of Educ., No. 18 Civ. 6670 (AT), 2019 WL 4039958, at *3 n.4 (S.D.N.Y. Aug. 27, 2019) (declining to deem pro se plaintiff's discrimination claims as abandoned for failure to respond to certain arguments in opposition to a motion to dismiss); Tsismentzoglou v. Milos Estiatorio Inc., No. 18 Civ. 9664 (RA), 2019 WL 2287902, at *2 n.3 (S.D.N.Y. May 29, 2019) (same, holding that "[a] pro se plaintiff, however, should not be presumed to have abandoned his claims because he did not address a defendant's specific arguments").  The single case Defendants cite in support of this argument (ECF No. 44 at 5 (citing Mura v. City of Mount Vernon, No. 19 Civ. 8699 (AEK), 2022 WL 4658453, at *5 (S.D.N.Y. Sept. 30, 2022)), is "inapposite, because [the] litigant[ in that case] had the benefit of counsel."  Rosen, 2019 WL 4039958, at *3 n.4.

(ECF Nos. 2 at 9 ¶ 2; 36-1 at 2). This injury qualifies as a disability under state and city law. See Deering v. City of N.Y., No. 21 Civ. 3601 (FB), 2023 WL 3997261, at *5 (E.D.N.Y. June 14, 2023) (while plaintiff's shoulder and hip injuries did not render him disabled under the ADA, holding that his "[NY]CHRL and [NY]SHRL claims survive . . . under the more lenient standards" of those statutes). The fact that Ms. Crawford's injury was temporary—while dispositive as to the federal claims—is not determinative of her state or city claims. See id.; Arazi, 2022 WL 912940, at *7 (rejecting argument that "transitory" injury cannot be a predicate disability under state and city law).

As with the ADA claims, however, I respectfully recommend that Ms. Crawford's NYSHRL and NYCHRL discrimination claims predicated on adverse employment action be dismissed because the Complaint does not plausibly allege a causal connection between her disability and her termination. (See § III(B)(2)(a), supra). See Vaigasi v. Solow Mgmt. Corp., No. 11 Civ. 5088 (RMB) (HBP), 2014 WL 1259616, at *7 (S.D.N.Y. Mar. 24, 2014) (holding that "Plaintiff has alleged virtually no facts that give rise to an inference that Defendants took adverse action against him because of his disability. . . . Rather, Plaintiff expresses his own personal belief, in a conclusory manner, that Defendants' various actions were taken on account of his disability. Such conclusory allegations, without more, amount to bald speculation, and are plainly insufficient to state a claim of disability discrimination under the ADA, NYSHRL, and NYCHRL"), aff'd, 750 F. App'x 37 (2d Cir. 2018) (summary order); Moore v. Verizon, No. 13 Civ. 6467 (RJS), 2016 WL 825001, at *10 (S.D.N.Y. Feb. 5, 2016) (holding that, where plaintiff received a termination letter while out on medical leave, "even under [the] NYCHRL, Plaintiff's claim cannot survive because she does not demonstrate a causal link connecting her termination to the claimed disability . . .");

Schenk v. Verizon, No. 10 Civ. 6281 (GBD), 2011 WL 6778284, at *2 (S.D.N.Y. Dec. 20, 2011) (holding that "Plaintiff failed to plead a plausible claim under state or city law because her complaint only mentions her 'disability' and the billing dispute with no factual allegations that would lead to the inference that her disability was a motivating factor for her service suspension. Even under the more liberal standard of the [NYCHRL], Plaintiff has failed to state a claim"). Nor does the Complaint plausibly allege that Ms. Crawford was treated "less well" than other employees on the basis of her disability, as required under the NYCHRL. See Flaherty v. Dixon, No. 22 Civ. 2642 (LGS), 2023 WL 2051861, at *12 (S.D.N.Y. Feb. 16, 2023) (granting motion to dismiss NYCHRL disability discrimination claims due to failure to plausibly allege "less well" treatment, including in connection with her termination); Coleman v. N.Y.C. Dep't of Health & Mental Hygiene, No. 20 Civ. 10503 (DLC), 2022 WL 704304, at *5 (S.D.N.Y. Mar. 9, 2022) (holding that plaintiff did not "satisfy even the less demanding standard of the NYCHRL. [Plaintiff] does not sufficiently allege any facts to support the claim that he was treated less well than other non-disabled employees for any discriminatory reason"); Rosen, 2019 WL 4039958, at *9 (holding that, NYCHRL claims failed because "Plaintiff does not allege that she was treated less well than other employees because of her disability").

Accordingly, I respectfully recommend that the Motion be GRANTED as to Ms. Crawford's NYSHRL and NYCHRL discrimination claims against the College premised on adverse employment action.

Ms. Crawford's failure-to-accommodate claims under the NYSHRL and NYCHRL, however, are sufficiently pled. The Complaint plausibly alleges that the College had notice of Ms. Crawford's broken ankle; that Ms. Crawford could perform the essential functions of the job after

a temporary leave of absence and, after returning, with the temporary accommodation of working with certain restrictions pertaining to standing and walking for prolonged periods of time; and that the College did not provide her with those accommodations or give her sufficient time to submit the necessary paperwork to return to work and instead terminated her employment. (See ECF No. 2, passim). This is sufficient under the NYSHRL and NYCHRL. See Limauro v. Consol. Edison Co. of N.Y., No. 20 Civ. 3558 (CM), 2021 WL 466952, at *9 (S.D.N.Y. Feb. 9, 2021) (holding that plaintiff stated failure-to-accommodate claims under the ADA, NYSHRL, and NCHRL where the complaint "clearly identifie[d] an accommodation . . . that he claims would have allowed him to perform his job while he was recovering"); Urena v. Swiss Post Sols., Inc., No. 16 Civ. 1998 (LGS), 2016 WL 5173389, at *5 (S.D.N.Y. Sept. 21, 2016) (same, where plaintiff requested not to sit or stand for extended periods of time or lift objects of a certain weight, and was terminated); Fernandez v. Windmill Distrib. Co., 159 F. Supp. 3d 351, 366 (S.D.N.Y. 2016) (same, where plaintiff requested an unpaid leave of absence and was terminated).

Defendants' argument that Ms. Crawford's submission of the Fitness for Duty Certification on May 14, 2019 (ECF Nos. 2 at 11 ¶ 7; 36 at 2) was not a request for a reasonable accommodation is unavailing. (ECF No. 35 at 19–20). A doctor's note that set a date by which Ms. Crawford could return to work with restrictions and specifically set forth what those restrictions would be—being permitted to not stand or walk for extended periods of time— plausibly put the College on notice that Ms. Crawford was requesting accommodations. See Limauro, 2021 WL 466952, at *9 (the "complaint clearly identifies an accommodation . . . that he claims would have allowed him to perform his job while he was recovering. Even if the request

were somehow unreasonable (which, at first glance, it is not), the complaint also clearly details that [defendant] failed to engage in any type of dialogue with [plaintiff] about alternative accommodations—as it was obligated to do under the ADA").  Defendants cite no law for their argument that a leave of absence is, by definition, "not a reasonable accommodation because such an accommodation precluded her from performing her job."  (ECF No. 35 at 20).  Several other district courts in the Second Circuit have recognized that a leave of absence can be a reasonable accommodation, provided it is not for an indefinite period of time.  See, e.g., Robles v. Medisys Health Network, Inc., No. 19 Civ. 6651 (ARR) (RML), 2020 WL 3403191, at *10 (E.D.N.Y. June 19, 2020) ("[plaintiff] has sufficiently alleged that an additional leave of absence would have been a reasonable accommodation that would have enabled him to perform the essential functions of his job.  [Plaintiff] alleges that an additional period of leave—which would have lasted for 'a definite period of time'—would have allowed him to treat his symptoms, which, in turn, 'would have enabled him to return to work and perform the essential functions of his job.' The Second Circuit has observed that precisely this set of facts may demonstrate that a leave of absence is a reasonable accommodation") (citing Graves v. Finch Pruyn & Co., 457 F.3d 181, 186 n.6 (2d Cir. 2006)); Sobhi v. Sociedad Textil Lonia Corp., No. 13 Civ. 8073 (AT) (MHD), 2014 WL 7474338, at *5 (S.D.N.Y. Dec. 30, 2014) ("the leave requested here was finite, and Plaintiff communicated that she planned to return and was able to perform her job.  The Court declines to hold such a request unreasonable as a matter of law").  Ms. Crawford's restricted duty was expected to last approximately eight weeks.  (ECF No. 2 at 10–11 ¶ 6).  This Court cannot, at this stage, conclude as a matter of law that that Defendants lacked the necessary paperwork to evaluate the reasonableness of Ms. Crawford's request for leave or to engage in the interactive

process beyond requesting additional documentation from Ms. Crawford and then terminating her when she failed to provide it by the deadline the College set.

Accordingly, I respectfully recommend that the Motion be DENIED as to Ms. Crawford's NYSHRL and NYCHRL disability discrimination claims against the College premised on a failure to provide a reasonable accommodation.

### C. Retaliation Claims

Ms. Crawford alleges that she engaged in protected activity when she (i) requested accommodations on May 14, 2019, and (ii) requested benefits under the FMLA on June 12, 2019 following the May 22, 2019 meeting with Ms. Uregar (ECF Nos. 2 at 11 ¶¶ 7–9; 41 at 6; see ECF No. 2 at 12 ¶ 13 (emailing FMLA paperwork to Ms. Uregar on June 12, 2019), and was retaliated against when she was (i) prevented from returning to work on May 29, 2019, and (ii) terminated on July 9, 2019.  (ECF No. 41 at 6; see ECF No. 2 at 12 ¶¶ 11–12, 14).  Defendants argue that Ms. Crawford does not plausibly allege (i) that she engaged in protected activity, or (ii) a causal connection between a protected activity and her termination.  (See ECF No. 35 at 23–25).

#### 1. Legal standards

Retaliation claims under the ADA, the Rehabilitation Act, and the NYSHRL are analyzed under a similar legal framework.  See Warmin v. N.Y.C. Dep't of Educ., No. 16 Civ. 8044 (KPF), 2019 WL 3409900, at *7 (S.D.N.Y. July 29, 2019).  "To state a claim for retaliation under the ADA, the Rehabilitation Act, or the NYSHRL, Plaintiff's pleading must plausibly suggest that:  '(i) [s]he engaged in protected activity, (ii) the employer was aware of this activity, (iii) [s]he was subjected to an adverse employment action, and (iv) a causal connection existed between the alleged adverse employment action and [her] protected activity.'"  Id. (quoting McGuire-Welch v. House

of the Good Shepherd, 720 F. App'x 58, 62 (2d Cir. 2018) (summary order)).  Protected activities

include requests for reasonable accommodations.  Warmin, 2019 WL 3409900, at *7 (citing

Flieger v. E. Suffolk BOCES, 693 F. App'x 14, 18 (2d Cir. 2017) (summary order)).  An adverse

employment action is defined as one that is "'materially adverse with respect to the terms and

conditions of employment,' such as termination."  Warmin, 2019 WL 3409900, at *7 (citing

Flieger, 693 F. App'x at 17).  For a retaliation claim to survive a motion to dismiss, the plaintiff

must plausibly allege that the adverse employment action was taken against her "'because' [s]he

has opposed any unlawful employment practice."  Vega, 801 F.3d at 90.  Causation can be shown

through indirect proof "that the protected activity was closely followed in time by the adverse

action."  Clark v. Jewish Childcare Ass'n, Inc., 96 F. Supp. 3d 237, 262 (S.D.N.Y. 2015) (quoting

Cifra v. GE, 252 F.3d 205, 217 (2d Cir. 2001)).  To plead retaliation under the NYCHRL, plaintiff

need only show that she "took an action opposing her employer's discrimination, and that, as a

result, the employer engaged in conduct that was reasonably likely to deter a person from

engaging in such action."  Mihalik, 715 F.3d at 112; see Warmin, 2019 WL 3409900, at *7.

"The retaliation inquiry under the NYCHRL is 'broader' than its federal counterpart."

Gonzalez v. City of N.Y., 377 F. Supp. 3d 273, 301 (S.D.N.Y. 2019), aff'd, 845 F. App'x 11 (2d Cir.

2021) (summary order) (quoting Fincher v. Depository Tr. & Cleaning Corp., 604 F.3d 712, 723

(2d Cir. 2010)).  Unlike retaliation claims under federal and state law, "retaliation complained of

under the NYCHRL need not result in an ultimate action with respect to employment . . . or in a

materially adverse change in the terms or conditions of employment."  Gonzalez, 377 F. Supp. 3d

at 301; see Colon v. City of N.Y., No. 19 Civ. 10435 (PGG) (SLC), 2021 WL 4427169, at *16 n.15

(S.D.N.Y. Sept. 26, 2021) (same).  Rather, the alleged retaliatory act must "be reasonably likely to

deter a person from engaging in protected activity." <u>Gonzalez</u>, 377 F. Supp. 3d at 301; <u>Colon</u>, 2021 WL 4427169, at *16 n.15 (same).  The plaintiff must still plausibly allege a "causal link" between the protected activity and the retaliatory act.  <u>Gonzalez</u>, 377 F. Supp. 3d at 301 (quoting <u>Williams v. N.Y.C. Hous. Auth.</u>, 335 F. App'x 108, 110 (2d Cir. 2009) (summary order)).

### 2.  <u>Application</u>

The Complaint plausibly states retaliation claims under each of the relevant statutes.  As discussed above, the Complaint plausibly alleges that Ms. Crawford's submission of the Fitness for Duty Certification on May 14, 2019 was a request for a reasonable accommodation. (<u>See</u> § III.B.2.b, <u>supra</u>).  Requests for accommodations are protected activities for the purposes of retaliation claims.  <u>See</u>, <u>e.g.</u>, <u>Warmin</u>, 2019 WL 3409900, at *9 (holding that protected activity was plausibly alleged based on a request for an accommodation made to the employer); <u>Sobhi</u>, 2014 WL 7474338, at *6 (holding that a request for leave as an accommodation constituted protected activity); <u>see</u> <u>also</u> ECF No. 35 at 15 (Defendants conceding that reasonable accommodation requests may constitute protected activity).

Likewise, Ms. Crawford also engaged in protected activity under the ADA when, on June 12, 2019, she emailed the FMLA Request Form and other paperwork to Ms. Uregar.  (ECF No. 13).  <u>See</u> <u>Bernheim v. N.Y.C. Dep't of Educ.</u>, No. 19 Civ. 9723 (VEC), 2021 WL 4198126, at *3 (S.D.N.Y. Sept. 15, 2021) (holding that "Plaintiff's request for FMLA leave was a protected activity sufficient to satisfy the first prong of a <u>prima</u> <u>facie</u> case of ADA retaliation"); <u>see</u> <u>also</u> <u>James v. N.Y.C. Transit Auth.</u>, No. 19 Civ. 2372 (ALC), 2022 WL 976368, at *5 (S.D.N.Y. Mar. 31, 2022) (holding that "Plaintiff's request of FMLA leave, an accommodation to which she believed she was entitled, qualifies as protected activity" under the ADA).  This does not qualify as protected

activity under the NYSHRL or NYCHRL.  See Benson v. Ruttura & Sons Constr. Co., Inc., No. 20 Civ. 853 (JS) (ST), 2021 WL 1238712, at *5 (E.D.N.Y. Mar. 31, 2021) (holding that "taking FMLA leave is not a protected activity under the NYSHRL"); Sutter v. Dibello, No. 18 Civ. 817 (ADS) (AKT), 2019 WL 4195303, at *22 (E.D.N.Y. Aug. 12, 2019) (holding that "Plaintiff's request for FMLA leave does not constitute a protected activity under the NYCHRL"), adopted by, 2019 WL 4193431 (E.D.N.Y. Sept. 4, 2019); Fernandez, 159 F. Supp. 3d at 367 (holding that "[t]aking FMLA leave is not a protected activity within the meaning of the NYCHRL").

Ms. Crawford also plausibly alleges an adverse employment action—her July 9, 2019 termination.  (ECF No. 2 at 13 ¶ 14).  See, e.g., Colon, 2021 WL 4427169, at *14 (termination is adverse employment action for purposes of retaliation claims); Beaton v. MTA N.Y.C. Transit, No. 15 Civ. 8056 (ER), 2016 WL 3387301, at *10 (S.D.N.Y. June 15, 2016) ("There is no question . . . that termination is an adverse employment action") (quoting Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006)).  Defendants do not dispute that Ms. Crawford's termination was an adverse employment action.  (See ECF No. 35).  The temporal proximity between the protected activities on May 14, 2019 and June 12, 2019 and Ms. Crawford's termination on July 9, 2019— 56 and 27 days, respectively—is sufficient to plausibly allege a causal connection.[8]  See Rivera v. JP Morgan Chase, 815 F. App'x 603, 608 (2d Cir. 2020) (summary order) ("Though there is no bright-line rule on temporal proximity, this Court has held that a one to two month period between the protected activity and adverse employment action is generally sufficient to make a

---

[8] A causal connection is plausibly alleged under the ADA and Rehabilitation Act predicated on temporal proximity with respect to both protected activities; under the NYSHRL and NYCHRL, only with respect to the May 14, 2019 protected activity.  (See § III.C.2, supra (June 12, 2019 activity is not protected under the NYSHRL or NYCHRL)).

prima facie causation showing. Here, in light of [plaintiff's] pro se status, drawing all reasonable inferences in his favor and liberally construing the pleadings, we conclude that he plausibly pled a claim for retaliation based on his allegation that a range of adverse employment actions began one to two months after his complaint to human resources"); e.g., Arazi, 2022 WL 912940, at *17 (holding that termination five months following protected activity was sufficient to plausibly allege causation).

Defendants argue that Ms. Crawford has failed to plausibly allege a causal connection between protected activity and her termination because "Plaintiff herself alleged the legitimate, non-discriminatory reason that she was terminated:  job abandonment."  (ECF No. 35 at 16). Defendants cite no law to support this argument, and the Court finds that it is without merit. First, Ms. Crawford alleges that "job abandonment" was the College's stated reason for her termination, as opposed to the actual reason for her termination.  (See ECF No. 2 at 13 ¶¶ 14–15 and passim).  Second, the question whether Defendants are able to articulate a legitimate, non-discriminatory reason for the termination decision—the second phase of the McDonnell-Douglas burden-shifting framework—arises at the summary judgment stage, not a motion to dismiss. See, e.g., Moazzaz v. Metlife, Inc., No. 19 Civ. 10531 (JPO), 2021 WL 827648, at *13 (S.D.N.Y. Mar. 4, 2021) ("If Defendants terminated [plaintiff] for a legitimate, non-discriminatory reason, they may present evidence and arguments to that effect in a motion for summary judgment or at trial") (citing Szuszkiewicz v. JPMorgan Chase Bank, 12 F. Supp. 3d 330, 343 (E.D.N.Y. 2014) ("the burden-shifting framework laid out in McDonnell Douglas is not applicable on a motion to dismiss") (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002))).  Ms. Crawford does not, at this stage, bear the burden of establishing that the College's proffered reason for termination

is false or pretextual, nor does the College have occasion to proffer that reason unless Ms. Crawford establishes a <u>prima facie</u> case of discrimination after discovery, as courts in this Circuit routinely recognize.  <u>See, e.g.</u>, <u>Mackenzie v. N.Y.C. Dep't of Educ.</u>, No. 21 Civ. 5711 (LTS), 2023 WL 2711848, at *10 (S.D.N.Y. Mar. 30, 2023) ("Defendants argue that Plaintiff cannot make out a discrimination claim because [Defendants] had a legitimate, non-discriminatory reason for terminating him [].  This argument is unavailing, because an employer's reasons for termination should not be considered at the pleading stage, particularly where, as here, the cited legitimate grounds are themselves alleged to be the product of discriminatory actions."); <u>Franklin v. Whole Foods Mkt. Grp., Inc.</u>, No. 20 Civ. 4935 (VEC), 2022 WL 256460, at *7 (S.D.N.Y. Jan. 26, 2022) ("alleged legitimate reasons for the adverse employment action cannot be considered on a motion to dismiss.  To keep the stages of <u>McDonnell Douglas</u> separate and to keep the pleading burden minimal, any inquiry into any non-discriminatory reasons for a defendant's conduct is reserved for summary judgment or trial."); <u>Zappa v. Town of Hempstead Sanitary Dist. No. 7</u>, No. 17 Civ. 39 (JMA) (ARL), 2018 WL 1702002, at *4 (E.D.N.Y. Jan. 16, 2018) ("Defendants argue that the complaint alleges facts from which one can infer that Defendants had a legitimate reason for removing Plaintiff from the driver's list . . . .  While that may be true, resolution of factual disputes regarding why Plaintiff was removed from the list are not appropriate at the Rule 12(b)(6) stage."), <u>adopted by</u>, 2018 WL 1701949 (E.D.N.Y. Mar. 31, 2018).

 Accordingly, I respectfully recommend that Defendants' Motion be DENIED as to Ms. Crawford's retaliation claims against the College.

**D.  FMLA Claims**

Ms. Crawford alleges that she requested FMLA benefits on June 12, 2019, and, instead of providing her with leave to which she was entitled, terminated her employment.  (ECF No. 41 at 3; see ECF No. 2 at 12–13 ¶¶ 13–15).  Defendants argue that Ms. Crawford does not plausibly allege she was eligible for FMLA leave, and that her claims should be dismissed because she failed to timely submit paperwork and information supporting her request for FMLA benefits. (See ECF No. 35 at 12).

**1.  Legal standards**

"It is 'unlawful for any employer to interfere with, restrain, or deny the exercise of[,] or the attempt to exercise, any right provided under [the FMLA].'"  Patel v. NYU Langone Hosps., No. 20 Civ. 112, 2021 WL 4852426, at *3 (2d Cir. Oct. 19, 2021) (summary order) (quoting 29 U.S.C. § 2615(a)(1)).  There are two types of private claims under the FMLA:  interference and retaliation.  Woods v. START Treatment & Recovery Ctrs., Inc., 864 F.3d 158, 166 (2d Cir. 2017). An FMLA interference claim "generally involve[s] conduct before an employee takes a leave of absence—an employer who has 'prevented or otherwise impeded the employee's ability to exercise rights under the FMLA.'"  Harris v. N.Y.C. Human Res. Admin., No. 20 Civ. 2011 (JPC), 2022 WL 3100663, at *18 (S.D.N.Y. Aug. 4, 2022) (quoting Woods, 864 F.3d at 166).  To state an FMLA interference claim, a plaintiff must plausibly allege:  "[i] that [s]he was an eligible employee under the FMLA; [ii] [the employer is] covered by the FMLA; [iii] [s]he was entitled under the FMLA to take leave; [iv] [s]he gave notice to [the employer] of h[er] intention to take leave; and [v] [s]he was denied benefits to which [s]he was entitled under the FMLA."  Patel, 2021 WL 4852426, at *3 (citing Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 424 (2d Cir. 2016)).

An FMLA retaliation claim, in contrast, "involves an employee 'exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer.'"  Harris, 2022 WL 3100663, at *18 (quoting Woods, 864 F.3d at 166).  To state an FMLA retaliation claim, a plaintiff must plausibly allege:  "[i] [s]he exercised rights protected under the FMLA; [ii] [s]he was qualified for h[er] position; [iii] [s]he suffered an adverse employment action; and [iv] the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent."  Patel, 2021 WL 4852426, at *3 (citing Graziadio, 817 F.3d at 429).  "But-for causation is not required under the FMLA."  Kirkland-Hudson v. Mount Vernon City Sch. Dist., No. 21 Civ. 695 (KMK), 2023 WL 2691622, at *29 (S.D.N.Y. Mar. 29, 2023) (citing Woods, 864 F.3d at 169).  As with ADA and other retaliation claims, at the motion to dismiss stage the causation element can be satisfied by close temporal proximity between the protected activity and adverse employment action.  Id.  The Second Circuit has held that "[a]n employer violates the FMLA when it considers an employee's use of FMLA leave as 'a negative factor in its decision to terminate h[er].'"  Patel, 2021 WL 4852426, at *3 (quoting Sista, 445 F.3d at 176).

### 2. Application

#### a. FMLA eligibility

As a threshold matter, Ms. Crawford plausibly alleges that she was eligible to take FMLA leave.  See Harris, 2022 WL 3100663, at *18 (FMLA eligibility is a "threshold question for both [interference and retaliation] claims") (quoting Arroyo-Horne v. City of N.Y., 831 F. App'x 536, 539 (2d. Cir. 2020) (summary order)).  While Defendants are correct that the Complaint initially failed to allege that Ms. Crawford worked 1,250 hours in the relevant twelve-month period (see

ECF No. 35 at 12; see generally ECF No. 2), she included this fact in the Opposition (ECF No. 41 at 3) which the Court accepts as true for the purposes of the Motion. (See § II.A, supra).

### b. FMLA interference

Applying the above factors, the Complaint plausibly alleges an FMLA interference claim. Ms. Crawford broke her ankle on April 17, 2019; was first informed she was required to apply for FMLA leave on May 22, 2019; submitted a request for FMLA leave on June 12, 2019; and the College did not respond to her request for leave, instead terminating her employment on July 9, 2019. (ECF No. 2 at 9, 11–13 ¶¶ 2, 8–10, 13–15). As to the first factor, as noted, Ms. Crawford plausibly alleges FMLA eligibility. (See § III.D.2.a). Defendants do not dispute the second, third, or fourth factors. (See ECF No. 35 at 12–14).

Defendants' only argument for dismissal of the FMLA interference claim is that Ms. Crawford "did not timely submit any of the FMLA documents that were requested" and that the forms submitted "did not contain all of the information requested by Defendants," and that, therefore, the College was entitled to deny her request. (ECF No. 35 at 21–22; see ECF No. 44 at 7–10). Defendants' argument is unavailing. Again, this Motion arises under Rule 12(b)(6), but Defendants argue that they had legitimate grounds for denying Ms. Crawford's request for FMLA leave, a conclusion that would require the Court to consider factual matter not included in the Complaint and accept Defendants' version of events. Both are inappropriate at the motion to dismiss stage. For example, Defendants ask the Court to find that it was justified in denying Ms. Crawford's request for FMLA leave because she failed to timely submit her FMLA Request Form and other paperwork, but the Complaint alleges that Ms. Crawford submitted the forms as soon as she was able. (See ECF No. 2 at 10–12 ¶¶ 6–10, 13). To accept Defendants'

argument would be to disregard the well-pleaded facts in favor of Defendants' narrative, which would be antithetical to the Court's role at this stage of the litigation. Neither Defendants' Motion nor the Reply cites a case in which a court granted a motion to dismiss an FMLA interference claim on the grounds that the employer's denial of the employee's request for leave was justified based on either the untimeliness of the employee's request or the insufficiency of the information provided. (See ECF Nos. 35 at 21–23; 44 at 7–10).[9] Accepting the Complaint's allegations as true, as I must on a motion to dismiss, Ms. Crawford plausibly alleges that she was denied benefits to which she was entitled under the FMLA, and therefore satisfies the fifth and final factor of the claim.

Accordingly, I respectfully recommend that the Motion be DENIED as to Ms. Crawford's FMLA interference claim against the College.

### c.  **FMLA retaliation**

The Complaint also plausibly alleges FMLA retaliation. Applying the required factors, Ms. Crawford exercised rights under the FMLA when she requested FMLA leave on June 12, 2019 (ECF No. 2 at 12 ¶ 13); Defendants do not dispute that she was qualified for her position (see ECF Nos. 35; 44); and she suffered an adverse employment action when she was terminated (ECF No. 2 at 13 ¶ 14). As noted above with respect to the ADA, Rehabilitation Act, NYSHRL, and NYCHRL retaliation claims, Ms. Crawford has plausibly alleged an inference of retaliatory intent

---

[9] The Court notes that, again, the only cases Defendants cite in support are cases decided on summary judgment, which are not relevant or persuasive with respect to this Motion. (See ECF Nos. 35 at 23; 44 at 8–9 (citing Willford v. United Airlines, No. 18 Civ. 1060 (GBD), 2021 WL 4066502 (S.D.N.Y. Sept. 7, 2021), aff'd, No. 21 Civ. 2483, 2023 WL 309787 (2d Cir. Jan. 19, 2023) (summary order) and Porter v. Potter, No. 07 Civ. 124 (BMC), 2010 WL 9047894 (E.D.N.Y. Jan. 20, 2010), aff'd, 484 F. App'x 589 (2d Cir. 2012) (summary order))).

(i.e., causation) via the close temporal proximity between the exercise of her FMLA-protected rights and her termination.  (See § III.C.2, supra).  See Patel, 2021 WL 4852426, at *3 (holding the "temporal connection between a series of protected absences and his firing for poor attendance gives rise to a plausible inference that he was fired for taking FMLA leave"); Spinelli v. City of N.Y., No. 13 Civ. 7112 (GBD) (SN), 2014 WL 4828814, at *4 (S.D.N.Y. Sept. 24, 2014) (denying motion to dismiss FMLA retaliation claims given gap in time of "about a month" between exercise of FMLA rights and adverse employment action).

Defendants' argument that Ms. Crawford has failed to plausibly allege an inference of retaliation because she "has not alleged any facts suggesting that her request for FMLA leave served as a negative factor in [the College's] decision to terminate [her]" (ECF No. 35 at 16) is unavailing because temporal proximity is sufficient to satisfy the "motivating factor" inquiry. Kinchen v. St. John's Univ., No. 17 Civ. 3244 (MKB), 2019 WL 1386743, at *13 (E.D.N.Y. Mar. 26, 2019) (citing Woods, 864 F.3d at 166, 169), aff'd, 830 F. App'x 691 (2d Cir. 2020) (summary order)); see also Farooqi v. N.Y.C. Dep't of Educ., No. 19 Civ. 3436 (DLC), 2021 WL 1549981, at *4 (S.D.N.Y. Apr. 20, 2021) ("plaintiff raises an inference of retaliatory intent if she demonstrates that exercising her rights under the FMLA was used as a 'negative factor' in the defendant's employment actions.  The temporal proximity of events may give rise to such an inference . . .").

Accordingly, I respectfully recommend that the Motion be DENIED as to Ms. Crawford's FMLA retaliation claim against the College.

### E. **Individual Liability**

#### 1. **The ADA and the Rehabilitation Act**

Ms. Crawford has withdrawn her claims against Ms. Uregar, Mr. Fuentes, and Ms. Clark (collectively, the "Individual Defendants") under the ADA and the Rehabilitation Act, as those statutes do not provide for individual liability. (ECF No. 41 at 6). See Harris, 2022 WL 3100663, at *6.

Accordingly, I respectfully recommend that those claims be DISMISSED WITH PREJUDICE.

#### 2. **The FMLA**

##### a. **Standard of review**

An individual is subject to personal liability under the FMLA if that person is an "employer" as defined by the FMLA. Smith v. Westchester Cnty., 769 F. Supp. 2d 448, 475 (S.D.N.Y. 2011). In assessing individual liability under the FMLA, district courts apply the "economic reality" test drawn from the Fair Labor Standards Act ("FLSA"). Id. The test requires the Court to determine "whether each named individual defendant controlled in whole or in part [] [P]laintiff['s] rights under the FMLA." Id. "To do so, the[] [courts] consider a nonexclusive and overlapping set of factors intended to encompass the totality of circumstances." Graziadio, 817 F.3d at 422. These factors include whether the employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. However, "[t]he economic reality test is a factual inquiry that does not bear on the sufficiency of pleadings." Smith, 769 F. Supp. 2d at 475. Thus, to survive a motion to dismiss, a plaintiff need not allege facts sufficient to satisfy the economic reality test; rather, she must simply "plead that

the proposed individual defendants had substantial control over the aspects of employment alleged to have been violated." Id. at 475–76.  In the context of FMLA claims predicated upon requests for leaves of absence, individual liability "extends to all those who controlled in whole or in part [plaintiff's] ability to take a leave of absence and return to her position." Johnson v. A.P. Prods., 934 F. Supp. 625, 629 (S.D.N.Y. 1996); see Wilson v. Am. Broad. Co., No. 08 Civ. 1333 (LAP), 2009 WL 8743559, at *5 (S.D.N.Y. Mar. 30, 2009) (same).

### b. Application

The Court finds that the Complaint plausibly alleges individual liability on the part of all three Individual Defendants for FMLA interference and FMLA retaliation.  Ms. Crawford alleges that Ms. Uregar, an HR benefits specialist, (1) initially provided Ms. Crawford with medical forms including the FMLA Request Form to be completed; (2) set the deadlines for receipt of the completed paperwork; (3) met with Ms. Crawford on May 22, 2019, at which time Ms. Crawford provided certain paperwork to Ms. Uregar who told Ms. Crawford she was deemed on "unauthorized leave" and would not be paid until she submitted the paperwork; (4) met with Ms. Crawford again on May 29, 2019, reiterating that Ms. Crawford was considered on "unauthorized leave" and advising Ms. Crawford to seek psychological help; and (5) responded to Ms. Crawford's eventual submission of the signed and certified FMLA Request Form and other paperwork by asking "why it took so long to receive the forms."  (ECF No. 2 at 10–13 ¶¶ 4, 7–9, 12–13).  These allegations are at the core of Ms. Crawford's FMLA interference and retaliation claims, which, as set forth above, I find to be sufficiently pled.  Accepting the allegations as true, as I must do on a motion to dismiss, these allegations plausibly support that Ms. Uregar "controlled in whole or in part plaintiff's ability to take a leave of absence and return to her

position," thereby subjecting her to individual liability under the FMLA. Smith, 769 F. Supp. 2d at 475–76 (holding that plaintiff plausibly alleged individual liability as to four individuals, one of whom "sent him the [] letter improperly denying his request for an extension of his FMLA leave. Therefore, Plaintiff has adequately pled that [they] controlled Plaintiff's rights under the FMLA or had substantial control over the aspects of Plaintiff's employment that he alleges were violated"); see Limauro, 2021 WL 466952, at *5 (holding that plaintiff "has alleged facts that raise an inference that all three of the individual defendants are subject to liability [under the FMLA] given their positions with[] [defendant]. . . . One can thus draw the inference that they were responsible for decisions related to his employment"); Emmons v. City Univ. of N.Y., 715 F. Supp. 2d 394, 419 (E.D.N.Y. 2010) (holding that, "in this case, reasonable inferences can be drawn from the complaint that [the individual defendants] could have had some degree of control over the hiring, firing, or granting of FMLA leave to plaintiff, and thus they could be deemed 'employers' under the statute.  And, at this stage, the Court so finds"); Wilson, 2009 WL 8743559, at *5 (holding that, "[t]aking Plaintiff's allegations as true, it can reasonably be inferred that [the individual defendant] had control over Plaintiff's ability to take medical leave").

Mr. Fuentes is also subject to individual liability based on allegations that (1) he was Ms. Crawford's direct supervisor at all relevant times, (2) he was the individual who Ms. Crawford initially notified of her injury and of her need for time off, (3) he was included on correspondence with Ms. Cox regarding the timing of Ms. Crawford's initial leave of absence, and (4) when Ms. Crawford attempted to return to work with restrictions per her doctor's orders, Mr. Fuentes prevented her from doing so and indicated she had not been "cleared" by HR to return.  (ECF No. 2 at 9–12 ¶¶ 1–2, 5, 11).  Mr. Fuentes is subject to individual liability under the FMLA

because he both "supervised and controlled employee work schedules or conditions of employment" and because he allegedly exercised a significant degree of control over Ms. Crawford's attempt to take leave and return to work, which are the precise "aspects of employment alleged to have been violated." Limauro, 2021 WL 466952, at *4–5 (holding that "although [the individual defendant] was not at the meeting where [plaintiff] was fired, he was [plaintiff's] direct supervisor, had discussions with [plaintiff] regarding his work assignments and determinations, and had authority over his scheduling"); see Smith, 769 F. Supp. 2d at 476 (holding that individual was subject to liability under the FMLA where he "sent Plaintiff home upon his return to work for failing to obtain unnecessary medical clearance"); Wilson, 2009 WL 8743559, at *5 (holding that plaintiff plausibly alleged individual liability under the FMLA against his supervisor).

With respect to Ms. Clark, while the Complaint does not contain significant background as to her role at the College, she was allegedly involved in the May 29, 2019 meeting at which Ms. Uregar and Ms. Crawford discussed the submission of medical paperwork and during which Ms. Uregar told Ms. Crawford that she was deemed on "unauthorized leave" due to her failure to timely submit FMLA Request Form. (ECF No. 2 at 12 ¶ 12). Further, Ms. Clark is the individual who provided Ms. Crawford with the Termination Letter. (Id. at 13 ¶ 14). While it is not perfectly clear from the Complaint the extent to which Ms. Clark was involved in decisions regarding Ms. Crawford's request for FMLA leave and whether Ms. Clark is the individual who made the decision to terminate Ms. Crawford's employment, I find that Ms. Crawford has met the minimal burden at the pleadings stage to support individual liability against Ms. Clark. See Limauro, 2021 WL 466952, at *5 (holding that, with respect to individuals "present at [plaintiff's] firing" and who

"informed [plaintiff] of [defendant's] apparent reasons for firing him," "[o]ne can thus draw the inference that they were responsible for decisions related to his employment"); Emmons, 715 F. Supp. 2d at 419 (holding that individual liability under FMLA is plausibly alleged against individuals who "could have had some degree of control over the hiring[] [or] firing" of plaintiff); see also Augustine v. AXA Fin., Inc., No. 03 Civ. 8362 (RWS), 2008 WL 5025017, at *6 (S.D.N.Y. Nov. 20, 2008) (noting that a termination letter signed by the individual defendant is sufficient to support an FMLA claim against him).

Accordingly, I respectfully recommend that the Motion be DENIED as to Ms. Crawford's FMLA claims against the Individual Defendants.

### 3. **The NYSHRL and the NYCHRL**

#### a. **Standard of review**

Unlike the ADA and the Rehabilitation Act, the NYSHRL and the NYCHRL permit direct, personal liability against individuals "who actually participate in discriminatory conduct." Harris, 2022 WL 3100663, at *6. Under the NYSHRL, "[i]ndividual liability may be imposed on an 'employer' who actually participates in the conduct giving rise to the discrimination." Id. The NYSHRL defines an "employer" as an individual "with ownership interest or supervisors, who themselves[] have the authority to hire and fire employees." Friederick v. Passfeed, Inc., No. 21 Civ. 2066 (RA), 2022 WL 992798, at *9 (S.D.N.Y. Mar. 31, 2022). Courts in this district have held that individual liability under the NYSHRL may be imposed on individuals who "have the authority to hire and fire employees." Gurley v. David H. Berg & Assocs., No. 20 Civ. 9998 (ER), 2022 WL 309442, at *7 (S.D.N.Y. Feb. 2, 2022). For retaliation claims under the NYSHRL, "any person" may be held individually liable, "regardless of whether the individual can be considered an employer,"

so long as they "actually participate[] in the conduct giving rise to the plaintiff's retaliation claim." Torres v. N.Y. Methodist Hosp, No. 15 Civ. 1264 (PKC) (PK), 2016 WL 3561705, at *12 (E.D.N.Y. Jan. 7, 2016) (quoting N.Y. Exec. L. § 296(7)). The NYCHRL "provides a broader basis for direct individual liability than the NYSHRL, in that individual liability of an employee may be found regardless of ownership or decisionmaking power." Gurley, 2022 WL 309442, at *8. Even under the NYCHRL, the individual "must have actually participated in the conduct that gave rise to the claims." Craven v. City of N.Y., No. 20 Civ. 8464 (ER), 2023 WL 3097434, at *10 (S.D.N.Y. Apr. 26, 2023).

In addition, both the NYSHRL and NYCHRL provide for liability against individuals who aid or abet another's discriminatory or retaliatory conduct. See Gurley, 2022 WL 309442, at *8 ("[a]ider-and-abettor liability under both statutes uses the same standard and requires showing that the defendant assisted another party in violating the law and that the individual employee actually participated in the conduct giving rise to the claim"). In contrast to direct claims against individuals, individuals can be liable for aiding and abetting even if they do not have a supervisory role or hiring and firing power. See Spires v. Metlife Grp., Inc., No. 18 Civ. 4464 (RA), 2019 WL 4464393, at *6 (holding that, where plaintiff fails to allege that individual defendants had the authority to hire and fire, "[n]onetheless, employees may also be held individually liable under the NYSHRL for 'aiding and abetting' discriminatory practices . . . [if they] actually participate[] in the conduct giving rise to a discrimination claim") (citing Feingold v. N.Y., 366 F.3d 138, 157–58 (2d Cir. 2004) and Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995) (abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998))); Tyson v. Town of Ramapo, No. 17 Civ. 4990 (KMK), 2019 WL 1331913, at *18 (S.D.N.Y. Mar. 25, 2019) ("[t]o be found liable

under § 296(6) [for aiding and abetting], an individual need not have supervisory or hiring and firing power, but still must have actually participated in the conduct") (quoting <u>Davis-Bell v. Columbia Univ.</u>, 851 F. Supp. 2d 650, 687 (S.D.N.Y. 2012)).

### b. **Application**

#### i. **Discrimination claims premised on adverse employment action**

As set forth above, the Complaint does not plausibly allege disability discrimination premised on adverse employment action. (<u>See</u> § III.B.2.b, <u>supra</u>). The absence of any factual allegations connecting the termination decision to Ms. Crawford's disability are fatal to any direct liability claims against the Individual Defendants. (<u>Id.</u>) Because there is no plausible direct claim against any Defendant, there are no viable aiding and abetting claims against the Individual Defendants. <u>See</u> <u>Ross v. N.Y.</u>, No. 15 Civ. 3286 (JPO), 2016 WL 626561, at *9 (S.D.N.Y. Feb. 16, 2016) ("[t]o hold the Individual Defendants liable under the NYSHRL and NYCHRL, [plaintiff] must plead facts showing that those Defendants aided or abetted primary violations by his employer").

Accordingly, I respectfully recommend that the Motion be GRANTED as to Ms. Crawford's NYSHRL and NYCHRL discrimination claims against the Individual Defendants premised on adverse employment action.

#### ii. **Failure-to-accommodate discrimination claims**

The Complaint plausibly alleges a direct failure-to-accommodate claim under the NYSHRL against Ms. Clark, and claims against Mr. Fuentes and Ms. Uregar for aiding and abetting. As noted, under the NYSHRL, direct liability against individuals is limited to owners or supervisors who actually participate in the alleged discrimination and who have the authority to carry out

personnel decisions such as hiring and firing.  See Friederick, 2022 WL 992798, at *9; N.Y. Exec.

L. § 296(1).  While the Complaint plausibly alleges that Ms. Clark delivered the Termination Letter

and thus may have the authority to fire employees, it does not plausibly allege that Ms. Uregar

or Mr. Fuentes have the power to make personnel decisions.   (See ECF No. 2 at 13 ¶ 14 and

passim).  Ms. Uregar and Mr. Fuentes, however, allegedly participated in the conduct giving rise

to the failure-to-accommodate discrimination claims, and therefore may be held liable for aiding

and abetting notwithstanding the lack of allegations plausibly supporting their authority, if any,

as supervisors or owners.  See Spires, 2019 WL 4464393, at *6 (holding that, although "it is

unclear from [plaintiff's] pleadings[] whether these individuals had the authority to hire and fire

him[, . . .] Plaintiff specifically alleges that all three of the Individual Defendants were personally

involved in the discriminatory conduct at issue," and, therefore, "his claim . . . under the NYSHRL

also survives against these individuals based on the alleged 'aiding and abetting' of the

discriminatory conduct at issue here").

Accordingly, I respectfully recommend that the Motion be DENIED as to Ms. Crawford's

NYSHRL discrimination claims against the Individual Defendants premised on an alleged failure

to provide a reasonable accommodation.

The Complaint also plausibly alleges claims for individual liability against the Individual

Defendants under the NYCHRL.  As discussed, Ms. Crawford alleges the direct involvement of all

three Individual Defendants with respect to her claims including her request for a reasonable

accommodation.  (See §§ III.B.2.b, III.E.2.b, supra).  This is sufficient under the liberal standard of

the NYCHRL.  See Zagerson v. N.Y.C. Dep't of Educ., No. 20 Civ. 11055 (KPF), 2022 WL

292917, at *10 n.14 (S.D.N.Y. Jan. 31, 2022) (holding that the complaint plausibly alleged

individual liability under the NYCHRL based on "myriad allegations that [the individual defendant] actually participated in conduct giving rise to [plaintiff's] discrimination claims"); <u>Foster v. Consol. Edison. Co. of N.Y., Inc.</u>, No. 21 Civ. 3570 (DLC), 2021 WL 4461163, at *1 (S.D.N.Y. Sept. 29, 2021) (same, based on allegations that "the Individual Defendants actually participated in [defendant's] discriminatory conduct," and holding that, "[w]hile the Individual Defendants' motion to dismiss takes issue with these allegations and asserts that they were not involved in the termination decision, these are issues of fact that cannot be resolved on a motion to dismiss"); <u>Karupaiyan</u>, 2021 WL 4341132, at *14 n.17 (same, based on allegations that individuals "played a decision-making role in Plaintiff's termination," and "have been involved in supervising Plaintiff"); <u>see also</u> <u>Xiang v. Eagle Enters., LLC</u>, No. 19 Civ. 1752 (PAE), 2020 WL 248941, at *7 (S.D.N.Y. Jan. 16, 2020) (holding that, "[f]or the same reasons that [the] Court has found that [plaintiff] has pled a <u>prima facie</u> case of individual liability as to [the individual defendants] under the NYSHRL, [plaintiff] has adequately pled facts to make out a <u>prima facie</u> case of individual liability under the NYCHRL, both under a theory of direct liability and aiding-and-abetting liability"); <u>Harris v. NYU Langone Med. Ctr.</u>, No. 12 Civ. 454 (RA) (JLC), 2013 WL 3487032, at *30 (S.D.N.Y. July 9, 2013) (holding that "many of these individual Defendants are mentioned throughout [plaintiff's] pleadings and [although] the extent of their participation in allege discriminatory conduct is unclear, the Court recommends denying the motion to dismiss at this time"), <u>adopted by</u>, 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013).

Accordingly, I respectfully recommend that the Motion be DENIED as to Ms. Crawford's NYCHRL discrimination claims against the Individual Defendants premised on an alleged failure to provide a reasonable accommodation.

### iii. Retaliation claims

For the same reasons, the Complaint plausibly alleges individual liability under the NYSHRL and NYCHRL against the Individual Defendants for retaliation. Ms. Crawford plausibly alleges that Mr. Fuentes prevented her from returning to work with restrictions, that Ms. Uregar denied her request for leave and otherwise interfered with her ability to take leave and return to work, and that Ms. Clark participated in the decision to terminate her. (See ECF No. 2 at 11–13 ¶¶ 7–9, 11–14). Therefore, Ms. Crawford plausibly alleges individual liability under the NYSHRL and NYCHRL against Ms. Clark for retaliation given her role in the termination, and aiding-and-abetting liability against Mr. Uregar and Mr. Fuentes based on their personal participation and actions taken post-dating Ms. Crawford's engagement in protected activity (see ECF No. 2 at 11–13 ¶¶ 7–9, 11–14; §§ III.B.2.b, III.E.2.b, III.E.3.b.ii, supra). See Friederick, 2022 WL 992798, at *12 (holding that the complaint plausibly alleged individual liability under the NYSHRL and NYCHRL for retaliation based on allegations of "actual[] participat[ion] in the conduct giving rise to [plaintiff's] retaliation claim"); see also Torres, 2016 WL 3561705, at *12 (holding that, unlike discrimination claims brought against individuals under the NYSHRL, retaliation claims may be brought directly against "any person" alleged to have directly participated, "regardless of whether the individual can be considered an employer" under the NYSHRL).

Accordingly, I respectfully recommend that the Motion be DENIED as to Ms. Crawford's NYSHRL and NYCHRL retaliation claims against the Individual Defendants.

**F. Leave to Amend**

Ms. Crawford requests leave to amend the Complaint in the event that the Motion is granted. (ECF No. 41 at 1). Defendants argue that leave to amend should be denied as futile. (ECF No. 44 at 11).

"Leave to amend should be 'freely give[n] . . . when justice so requires.'" Trujillo v. City of N.Y., No. 14 Civ. 8501 (PGG), 2016 WL 10703308, at *21 (quoting Fed. R. Civ. P. 15(a)(2)); see Bloomberg v. N.Y.C. Dep't of Educ., 410 F. Supp. 3d 608, 628 (S.D.N.Y. 2019) (permitting amended complaint after granting motion to dismiss). The Second Circuit recognizes that "the 'liberal spirit' of the Federal Rule of Civil Procedure 15 embodies a 'strong preference for resolving disputes on the merits.'" Davis v. Goodwill Indus. of Greater N.Y. & N.J., Inc., No. 15 Civ. 7710 (ER), 2017 WL 1194686, at *14 (S.D.N.Y. Mar. 30, 2017) (quoting Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190–91 (2d Cir. 2015)). Thus, "[d]istrict courts 'ha[ve] broad discretion in determining whether to grant leave to amend.'" Trujillo, 2016 WL 10703308, at *21 (quoting Gurary v. Winehouse, 235 F.3d 793, 801 (2d Cir. 2000)).

Courts "ordinarily recommend that a pro se plaintiff be given leave to amend h[er] complaint to replead all factually insufficient claims." Huggins v. Schriro, No. 14 Civ. 6468 (GBD) (JLC), 2015 WL 7345750, at *9 (S.D.N.Y. Nov. 19, 2015); see Grullon v. City of New Haven, 720 F.3d 133, 140 (2d Cir. 2013) ("[a] pro se complaint generally should not be dismissed without granting the plaintiff leave to amend at least once").

Given Ms. Crawford's pro se status, I respectfully recommend that she be granted leave to amend the claims she has inadequately pled; i.e., the ADA and Rehabilitation Act

discrimination claims against the College, and the NYSHRL and NYCHRL discrimination claims predicated on adverse employment action against all Defendants.

### IV.    CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Defendants' Motion be GRANTED IN PART and DENIED IN PART, as follows:

(1) The ADA and Rehabilitation Act claims against the Individual Defendants be DISMISSED WITH PREJUDICE.

(2) The Motion be GRANTED and with leave to amend as to the following claims:

(a) ADA and Rehabilitation Act discrimination claims against the College, and

(b) NYSHRL and NYCHRL discrimination claims predicated on adverse employment action against all Defendants.

(3) The Motion be DENIED as to the following claims:

(a) ADA and Rehabilitation Act retaliation clams claims against the College,

(b) FMLA interference and retaliation claims against all Defendants, and

(c) NYSHRL and NYCHRL discrimination claims predicated on a failure to provide a reasonable accommodation and retaliation claims against all Defendants.

Defendants shall promptly serve a copy of this Report and Recommendation on Ms. Crawford, and, by July 21, 2023, file proof of service on the docket.

The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to Ms. Crawford.

Dated:    New York, New York
          July 19, 2023

_____
**SARAH L. CAVE**
**United States Magistrate Judge**

\*                    \*                    \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Gardephe.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).  If Ms. Crawford does not have access to cases cited in this Report and Recommendation that are reported on Westlaw, she may request copies from Defendants' counsel.  See Loc. Civ. R. 7.2.