UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAREN CRAWFORD,

                         Plaintiff,

          - against -

BRONX COMMUNITY COLLEGE,
PURYSABEL UREGAR, ALAN
FUENTES, and MARTA CLARK,

                         Defendants.

---

**ORDER**

22 Civ. 1062 (PGG) (SLC)

---

PAUL G. GARDEPHE, U.S.D.J.:

            Pro se Plaintiff Caren Crawford worked as an office assistant at Bronx Community College of the City University of New York (the "College"). After she suffered a broken ankle and missed work, her employment was terminated. (Cmplt. (Dkt. No. 2)) In the Complaint, Crawford asserts that the College, her former supervisor Alan Fuentes, and two of the College's Human Resources employees – Purysabel Uregar and Marta Clark – violated the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. (the "FMLA"); the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. (the "Rehabilitation Act"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (the "ADA"); the New York State Human Rights Law, N.Y. Exec. L. § 290 et seq. (the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. (the "NYCHRL"). (Id. at 4)[1]

            On November 22, 2022, Defendants moved to dismiss all of Plaintiff's claims. (Def. Mot. (Dkt. No. 34)) This Court referred Defendants' motion to Magistrate Judge Sarah

---

[1] The page numbers of documents referenced in this order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

Cave for a Report and Recommendation ("R&R").  (Referral Order (Dkt. No. 45))  In a July 19, 2023 R&R, Judge Cave recommends that Defendants' motion to dismiss be denied in part and granted in part.  (R&R (Dkt. No. 46) at 46)

The R&R will be adopted as set forth below.

## BACKGROUND

I.    FACTS[2]

Plaintiff Crawford was employed by the College as a full-time "office assistant" from October 2017 until her termination in July 2019.  (Cmplt. Addendum (Dkt. No. 2) at 9 ¶ 1, 13 ¶ 14; Pltf. Mot. to Dismiss Opp. (Dkt. No. 41) at 3)  She worked at the College's Center for Sustainable Energy for a month, and then at the College's Department of Career Development until her termination.  (Cmplt. Addendum (Dkt. No. 2) at 9 ¶ 1)

On April 17, 2019, Plaintiff fell down a flight of stairs at Grand Central Terminal.  (Id. at 9 ¶ 2)  She was transported by ambulance to the emergency room at Bellevue Hospital Center, where she received an x-ray of her left foot.  (Id.)  A doctor informed Plaintiff that she

---

[2]  The parties have not objected to Judge Cave's factual recitation.  Accordingly, this Court adopts her factual account in full.  See Hafford v. Aetna Life Ins. Co., No. 16-CV-4425 (VEC) (SN), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts them in full.").

In considering a motion to dismiss for failure to state a claim, a court is generally confined to "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).  Given Plaintiff's pro se status, however, and the fact that Defendants have not objected to new factual allegations set forth in Plaintiff's opposition brief, this Court has considered those factual allegations.  See Torrico v. Int'l Bus. Machines Corp., 213 F. Supp. 2d 390, 399 n.4 (S.D.N.Y. 2002) (considering facts alleged in pro se litigant's opposition to defendant's motion to dismiss); Agbor v. Presidency of Republic of Equatorial Guinea, No. 18-CV-8611 (PAE) (RWL), 2021 WL 3914455, at *4 (S.D.N.Y. Aug. 16, 2021) (same), report and recommendation adopted, No. 18 Civ. 8611 (PAE), 2021 WL 3913525 (S.D.N.Y. Sept. 1, 2021).

had suffered a broken ankle. (<u>Id.</u>) Plaintiff was instructed to "stay off [her left] foot," "keep [her left foot] elevated and iced," and "come back to the hospital [two] weeks later" for a follow-up appointment. (<u>Id.</u>) Medical staff provided her with an orthopedic boot and cane for her broken ankle. (<u>Id.</u>)

While at the emergency room, Plaintiff "texted [her] supervisor [at the College]," Defendant Alan Fuentes. (<u>Id.</u>) She told Fuentes that "[she] had fallen down the stairs." (<u>Id.</u>) After she was discharged from the Hospital, she texted Fuentes and "the staff" an image of her broken ankle in a boot, and informed her co-workers that she "would be out of the office [from April] 17 [to April] 19." (<u>Id.</u>)

Between April 22 and April 24, 2019, Plaintiff texted Fuentes "each day" "to call out sick" from work. (<u>Id.</u> at 9 ¶ 3) After Plaintiff had been absent from work for more than five consecutive days, Fuentes instructed her to contact the College's Human Resources department. (<u>Id.</u>; Pltf. Mot. to Dismiss Opp. (Dkt. No. 41) at 2)

On April 26, 2019, Plaintiff contacted Rosa Mateo, a "timekeeper" at the Human Resources department, to "let her know that [she] had suffered an accident and had been out [] sick[,] but wanted to use [her] accrued sick time [or] vacation time." (Cmplt. Addendum (Dkt. No. 2) at 9-10 ¶ 3) Plaintiff asked Mateo how much sick time and vacation time she had accrued, how she should submit her timesheets, and how she could apply for temporary disability leave. (<u>Id.</u>) Mateo forwarded Plaintiff's note to Defendant Purysabel Uregar. (<u>Id.</u> at 10 ¶ 4)

In an April 29, 2019 email to Plaintiff, Defendant Uregar – a "[Human Resources] benefits specialist" – provided three documents: (1) a form "request[ing]" leave under the FMLA; (2) a medical "[c]ertification for [s]erious [h]ealth [c]ondition," to be completed by a

physician; and (3) a "fitness for duty" form, also to be completed by a physician.  (<u>Id.</u> at 10 ¶¶ 4,

6, 11 ¶ 8)

           The "fitness for duty form" includes the following language:

> An employee on FMLA or Non-FMLA Medical Leave of Absence because of his/her own serious medical condition must present this certification to the Human Resources Department prior to or on the day he/she returns to work.

> Supervisors are advised to forward any forms submitted directly to them to the Human Resources Department.

> An employee may not work without this certification.  If you are on unpaid leave, Human Resources will place you back on the payroll ONLY upon receipt of this form.

(Reynolds Decl., Ex. A (Fitness for Duty Certification) (Dkt. No. 36-1) at 2) (emphasis in

original)  A healthcare provider is required to certify the employee's start date of "medical care

leave," the date when the employee may return to work, and the conditions under which the

employee is able to return to work and resume her job duties.  (<u>Id.</u>)

           In the April 29, 2019 email, Uregar did not explain why she was sending these

documents to Plaintiff, or "which [documents] applied to [Plaintiff's] situation."  (<u>Id.</u> at 10 ¶ 4)

The email did state, however, that the documents "had to be submitted by [May 10, 2019]."  (<u>Id.</u>)

Plaintiff requested an extension of time, because she was not able to schedule an appointment

with an orthopedist at Bellevue Hospital until after May 10, 2019.  (<u>Id.</u> at 10 ¶¶ 4, 6)  The

College granted her an extension to May 13, 2019.  (<u>Id.</u> at 10 ¶ 6)

           In a May 8, 2019 email, Human Resources employee Keisha Cox informed

Plaintiff that she would "need[] to submit [her] time sheets, or [her] pay would be interrupted.

(<u>Id.</u> at 10 ¶ 5)  Plaintiff emailed the requested time sheets to Cox and Fuentes, but "never

received another paycheck."  (<u>Id.</u>)

On May 14, 2019, one day after the deadline for Plaintiff's application for FMLA leave, Plaintiff was seen by Dr. Lauren Santiesteban, an orthopedist. (See Fitness for Duty Certification (Dkt. No. 36-1) at 2) Dr. Santiesteban completed Plaintiff's FMLA "fitness for duty" form, certifying that Plaintiff "may return to work with modified duty" on May 29, 2019, and could "return to full, unrestricted duty" on June 12, 2019. (Id.) (explaining that while on "modified duty" Plaintiff "should not stand for prolonged periods of time or walk for prolonged periods of time") That same day, Plaintiff submitted the Fitness for Duty form to the College's Human Resources Department. (Cmplt. Addendum (Dkt. No. 2) at 11 ¶ 7)

Plaintiff then scheduled a meeting with Uregar for May 22, 2019. (Id. at 11 ¶ 8) At that meeting, Plaintiff provided Uregar with a copy of the Bellevue Hospital's emergency room's notes regarding her care on April 17, 2019, and her "doctor's notes." (Id.) Uregar asked Plaintiff "why [she] did not come to work." (Id. at 11 ¶ 9) Uregar also told Plaintiff that her FMLA forms were "not completed," that she was "considered [to be] on unauthorized leave," and that she "would be dropped from the payroll" "until [she] submitted [all required FMLA] forms." (Id. at 11 ¶¶ 8, 9) This was the first time Plaintiff was told that the form requesting FMLA leave – a form attached to Uregar's April 29, 2019 email – was "required for authorized leave." (Pltf. Mot. to Dismiss Opp. (Dkt. No. 41) at 2) Plaintiff explained to Uregar that she had not understood that the FMLA request form "applied to [her] situation," "because the FMLA request form states [that] it must be filled out before leave was needed." (Cmplt. Addendum (Dkt. No. 2) at 11 ¶ 9)

On May 24, 2019, Plaintiff went to Bellevue Hospital to obtain the FMLA certification of serious health condition form. (Id. at 10 ¶ 6, 11 ¶ 10) Plaintiff was told that she "needed to make a request through [the Hospital's] Medical Records/Correspondence

Department to see a doctor who could fill out the FMLA forms," and that she "would receive signed copies of the forms" in the mail in about ten days. (Id. at 11 ¶ 10)  On May 26, 2019, Plaintiff requested an FMLA certification of serious health condition form from the Hospital's Medical Records Department.  (Id. at 11 ¶ 10)

On May 29, 2019 – the day Dr. Santiesteban had certified that Plaintiff could return to work on "modified duty" – Plaintiff reported to work at the College.  (Id. at 12 ¶ 11; see Fitness for Duty Certification (Dkt. No. 36-1) at 2)  Defendant Fuentes informed Plaintiff that she "would have to be cleared [by Human Resources] to resume work[]."  (Cmplt. Addendum (Dkt. No. 2) at 12 ¶ 11)  Fuentes then "called [Human Resources] and sent [Plaintiff] over to . . . their office."  (Id.)

At the Human Resources office, Defendant Marta Clark escorted Plaintiff to Defendant Uregar's office for a meeting.  (Id. at 12 ¶ 12)  At that meeting, Uregar asked Plaintiff "why did [she] not come into work," informed Plaintiff that her absence continued to be considered "unauthorized" sick leave, and provided Plaintiff with "a letter extending [her] FMLA form [submission] deadline by two days[,] to May 31[,] 2019."  (Id.)  After the meeting, Plaintiff "was escorted off campus" by three campus security officers.  (Id.)

On June 12, 2019, Plaintiff received the outstanding FMLA certification of serious health condition form from Bellevue Hospital.  (Id. at 12 ¶ 13)  She "immediately emailed copies" of the form to Uregar.  (Id.)  In a June 13, 2019 email, Uregar "ask[ed] [Plaintiff] why it took so long to receive the forms."  (Id.)  In a June 14, 2019 email, Plaintiff explained that the Hospital's procedure "takes two weeks," and she forwarded to Uregar an information sheet the Hospital had provided.  (Id. at 12 ¶ 13, 13 ¶ 15)  Plaintiff asked Uregar for an update as to "next steps."  (Id. at 12 ¶ 13)  She did not receive a reply.  (See id. at 13 ¶ 14)

On July 9, 2019, Defendant Clark informed Plaintiff that her employment had been terminated. (Id. at 13 ¶ 14) The stated reason for Plaintiff's termination was "[j]ob [a]bandonment." (Id.) Plaintiff contends that this explanation was pretextual, and that her employment was terminated in retaliation for requesting medical leave to which she was entitled under the FMLA. (Id. at 13 ¶ 15; see also id. at 4)

Plaintiff further contends that – after she suffered her ankle injury on April 17, 2019 – Defendants discriminated against her "on the basis of [her] disability," because "[n]o one at [Human Resources] nor [her] supervisor did anything to accommodate [her] situation." (Id. at 13 ¶¶ 14, 15) According to Plaintiff, Defendants' acts of discrimination culminated in her termination on July 9, 2019. (Id. at 13 ¶ 15)

## II.    PROCEDURAL HISTORY

### A.    Administrative Proceedings and the Complaint

On March 9, 2020, Plaintiff filed a charge of discrimination with the New York City Commission on Human Rights, which accepted the charge on behalf of the United States Equal Employment Opportunity Commission (the "EEOC"). (See NYCCHR Cmplt. (Dkt. No. 2) at 14) On November 8, 2021, the EEOC issued a right to sue letter. (Id. at 16; see also Cmplt. (Dkt. No. 2) at 6)

The Complaint was filed on February 7, 2022. Liberally construed, the Complaint asserts claims against all Defendants for (1) interference with Plaintiff's FMLA rights, in violation of the FMLA; (2) disability discrimination, based on adverse employment actions and failure to accommodate Plaintiff's disability, in violation of the ADA and the Rehabilitation Act, the NYSHRL, and the NYCHRL; and (3) retaliation, in violation of the FMLA, the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL. (Cmplt. (Dkt. No. 2) at 4-5)

B.     <u>Motion to Dismiss and the R&R</u>

   Defendants moved to dismiss all of Plaintiff's claims on November 22, 2022.

(Mot. to Dismiss (Dkt. No. 34))  This Court referred Defendants' motion to Magistrate Judge

Cave for an R&R on May 26, 2023.  (Order of Referral (Dkt. No. 45))

   On July 19, 2023, Judge Cave issued a thorough 47-page R&R recommending

that Defendants' motion to dismiss be denied in part, and granted in part.  (<u>See</u> R&R (Dkt. No.

46) at 46)

   As to Plaintiff's interference claim under the FMLA, Judge Cave recommends

that Defendants' motion to dismiss be denied, because the Complaint plausibly alleges that

Plaintiff was "denied benefits to which she was entitled [to] under the FMLA."  (<u>Id.</u> at 39)

   As to Plaintiff's ADA and Rehabilitation Act claims against Fuentes, Uregar, and

Clark, Judge Cave notes that Plaintiff voluntarily "withdr[e]w[]" these claims.  (<u>Id.</u> at 35; <u>see</u>

<u>also</u> Pltf. Mot. to Dismiss Opp. (Dkt. No. 41) at 6 ("Plaintiff understands that the ADA and the

Rehabilitation Act do not provide for individual liability, and therefore voluntarily drops these

claims."))  Judge Cave recommends that these claims be dismissed with prejudice.  (R&R (Dkt.

No. 46) at 35)

   As to Plaintiff's disability discrimination claims, Judge Cave recommends that (1)

Plaintiff's ADA and Rehabilitation Act claims against the College be dismissed, because the

Complaint does not adequately allege that Crawford has a "disability" (<u>id.</u> at 16-17); and (2) to

the extent that Plaintiff's NYSHRL and NYCHRL claims are predicated on an adverse

employment action, that those claims be dismissed, because the Complaint does not allege a

"causal connection" between Plaintiff's disability and her termination.  (<u>Id.</u> at 20, 41).  In light of

Plaintiff's <u>pro se</u> status, Judge Cave recommends that Plaintiff be given leave to amend these

claims.  (<u>Id.</u> at 21, 45-46)  To the extent that Plaintiff's NYSHRL and NYCHRL disability

discrimination claims are predicated on a failure to accommodate, however, Judge Cave recommends that Defendants' motion to dismiss be denied. (Id. at 24, 42-43)

As to Plaintiff's retaliation claims under (1) the ADA and the Rehabilitation Act, as against the College; and (2) the FMLA, the NYSHRL, and the NYCHRL, as against all Defendants, Judge Cave recommends that Defendants' motion to dismiss be denied. Judge Cave concludes that the Complaint plausibly alleges a causal connection between Plaintiff's protected activity and Defendants' alleged retaliatory acts. (Id. at 29, 44)

The R&R notifies the parties that they "have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure." (Id. at 47) The R&R further states that a "failure to object within fourteen (14) days will result in a waiver of objections and will preclude appellate review." (Id.) (emphasis omitted) (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985))

C.    **Defendants' Objections**

Defendants filed objections to the R&R on September 1, 2023. (Def. Obj. (Dkt. No. 50); see Dkt. No. 49 (granting extension of time to file objections)) Defendants argue that Judge Cave erred in finding that

(1) Plaintiff adequately alleged interference claims under the FMLA. As against the College, Defendants argue that Plaintiff did not "timely" submit her FMLA documents. (Def. Obj. (Dkt. No. 50) at 17-18) As against Uregar, Fuentes, and Clark, Defendants argue that they are not "employer[s]" within the meaning of the FMLA (id. at 21);

(2) "Plaintiff's temporary injury" – her broken ankle – "qualified as a disability," under the NYSHRL and the NYCHRL (id. at 10-12);

(3) Plaintiff stated a claim for failure to accommodate under the NYSHRL and the NYCHRL, because the "Fitness for Duty Certification that Plaintiff

submitted could not have put [the College] on notice of any alleged disability," and the Complaint "does not even identify what [Plaintiff's] job responsibilities were or how her temporary injury affected her ability to perform her job" (id. at 14);

(4) Plaintiff stated a retaliation claim under the FMLA, the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL, because the Complaint does not allege that Plaintiff engaged in protected activity, and does not allege a causal connection between protected activity and her termination. (Id. at 18-20)

Defendants further contend that Judge Cave erred in recommending that Plaintiff be granted leave to amend, because "Plaintiff cannot ever state valid claims" and any amendment would be futile. (Id. at 23-24)

Plaintiff has not responded to Defendants' objections.

## DISCUSSION

## I.    LEGAL STANDARDS

### A.    Review of a Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where a timely objection has been made to a magistrate judge's recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.

However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'" Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (quoting Vega v. Artuz, No. 97 Civ. 3775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). "To the extent . . . that the [objecting] party makes

only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the [R&R] strictly for clear error." IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008).

For portions of the R&R to which no objection is made, a court's review is limited to a consideration of whether there is any "clear error on the face of the record" that precludes acceptance of the recommendations. Wingate v. Bloomberg, No. 11-CV-188 (JPO), 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (citation and quotation marks omitted).

### B.     Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint," and must "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

An "employment discrimination plaintiff need not plead a prima facie case of discrimination" in order to defeat a motion to dismiss, however. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002). Instead, Plaintiff's obligation is to plead a "'claim [that is] facially plausible and [that] give[s] fair notice to the defendants of the basis for the claim.'" Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) (quoting Fowler v.

Scores Holding Co., Inc., 677 F. Supp. 2d 673, 679 (S.D.N.Y. 2009)); see also Robles v.

Medisys Health Network, Inc., No. 19 Civ. 6651 (ARR) (RML), 2020 WL 3403191, at *4

(E.D.N.Y. June 19, 2020) (applying Swierkiewicz and its progeny to ADA and FMLA claims).

   A "pro se complaint . . . [is] interpret[ed] . . . to raise the 'strongest [claims] that

[it] suggest[s].'" Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Triestman v. Fed.

Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)). "[A]lthough pro se filings

are read liberally and must be interpreted 'to raise the strongest arguments that they suggest,' a

pro se complaint must still 'plead sufficient facts to state a claim to relief that is plausible on its

face.'" Wilder v. U.S. Dep't of Veterans Affairs, 175 F. Supp. 3d 82, 87 (S.D.N.Y. 2016)

(quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)). Moreover, "the court need not

accept as true 'conclusions of law or unwarranted deductions of fact,'" Whitfield v. O'Connell,

No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting First

Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)), and "'[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice,'" even where a plaintiff is proceeding pro se. Harris v. Mills, 572 F.3d 66, 72 (2d Cir.

2009) (quoting Iqbal, 556 U.S. at 678).

## II. STANDARD OF REVIEW FOR DEFENDANTS' OBJECTIONS

   In arguing that Judge Cave erred in finding that the Complaint states a claim

under the FMLA and the federal, state, and city discrimination statutes, Defendants merely

repeat arguments that they made in their original motion to dismiss. (Compare Def. Obj. (Dkt.

No. 50) at 10-24 with Def. Br. (Dkt. No. 35) at 19-32) Accordingly, this Court will review the

R&R – including those portions of the R&R that Defendants have objected to – only for clear

error. See Phillips, 955 F. Supp. 2d at 211.

### III.  FMLA INTERFERENCE CLAIM

#### A.    Applicable Law

The FMLA entitles eligible employees to twelve weeks of unpaid leave every year "[b]ecause of a serious health condition that makes the employee unable to perform the functions of [her] position."  29 U.S.C. § 2612(a)(1)(D)); see Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 174 (2d Cir. 2006) (same).

The FMLA bars interference with the assertion of rights under the Act, and it prohibits retaliating against employees who assert their rights under the Act.  See Woods v. START Treatment & Recovery Ctrs., Inc., 864 F.3d 158, 166 (2d Cir. 2017).  The FMLA "'makes it illegal for employers to:  (1) interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the FMLA; or (2) discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the FMLA,'" and "'creates a private right of action to seek both equitable relief and money damages against any employer' that 'interfere[s] with, restraint[s], or den[ies] the exercise of FMLA rights.'"  Stuart v. T-Mobile USA, Inc., No. 14 Civ. 4252 (JMF), 2015 WL4760184, at *3 (S.D.N.Y. Aug. 12, 2015) (quoting first Smith v. Westchester Cnty., 769 F. Supp. 2d 448, 462 (S.D.N.Y. 2011) and then quoting Nevada Dept. of Human Resources v. Hibbs, 538 U.S. 721, 724-25 (2003)).

To survive a motion to dismiss an FMLA interference claim, a complaint must plead facts demonstrating that "[1] [plaintiff] is an eligible employee under the FMLA; [2] that defendant is an employer as defined in [the] FMLA; [3] that [plaintiff] was entitled to leave under [the] FMLA; [4] that [plaintiff] gave notice to the defendant of her intention to take leave; and [5] that [plaintiff] was denied benefits to which she was entitled under [the] FMLA."  Wells v. Achievement Network, No. 18 Civ. 6588 (KPF), 2021 WL 810220, at *12 (S.D.N.Y. Mar. 2, 2021) (internal quotation marks and citation omitted).

**B.**    **Analysis**

Judge Cave recommends that Defendants' motion to dismiss Plaintiff's FLMA

interference claim be denied.

The Complaint – liberally construed – alleges that Defendants interfered with

Plaintiff's FMLA rights by denying her request to take FMLA leave between April 17, 2019 and

May 29, 2019, to recover from her broken ankle.  (See Cmplt. Addendum (Dkt. No. 2) at 13 ¶

15)

In moving to dismiss, Defendants argue that Plaintiff has not pled facts showing

that (1) she is "entitled" to benefits under the FMLA, because she did not "timely and completely

submit the necessary documents" by the designated deadline "to be granted FMLA leave"; and

(2) Uregar, Fuentes, and Clark are "employer[s]" under the statute, because the Complaint does

not allege that they "controlled Plaintiff's rights under the FMLA."[3]  (Def. Obj. (Dkt. No. 50) at

17, 20-21) (citing Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 422 (2d Cir. 2016))

As to Defendants' first argument, Judge Cave concludes that Plaintiff "plausibly

alleges that she was denied benefits to which she was entitled under the FMLA."  (R&R (Dkt.

No. 46) at 33)

The FMLA provides that "[t]he employee must provide the requested certification

to the employer within 15 calendar days after the employer's request."  29 C.F.R. § 825.305(b).

---

[3] Defendants do not object to Judge Cave's finding that Plaintiff's work at the College makes
her eligible for FMLA benefits.  (See R&R (Dkt. No. 46) at 31-32)  To be eligible for FMLA
benefits, an employee must have been employed "for at least 12 months by [the employer]," and
must have worked at least 1,250 hours in the twelve months preceding the request for FMLA
leave.  See 29 U.S.C. § 2611(2)(A).  Here, Plaintiff has alleged that she worked full-time for the
College, averaging 37.5 hours a week, between April 2018 and April 2019.  (Pltf. Mot. to
Dismiss Opp. (Dkt. No. 41) at 3)  Accordingly, this Court agrees with Judge Cave's finding
concerning Plaintiff's eligibility for FMLA benefits.

"If the employee . . . fails to provide any certification, the employer may deny the taking of FMLA leave."  Id. § 825.305(d); see also Willford v. United Airlines, Inc., No. 18 Civ. 1060 (GBD), 2021 WL 4066502, at *9 (S.D.N.Y. Sept. 7, 2021) ("Failure to submit a timely medical certification is a valid reason for denying an FMLA leave request."), aff'd, No. 21-2483, 2023 WL 309787 (2d Cir. Jan. 19, 2023); Porter v. Potter, No. 07 Civ. 0124 (BMC), 2010 WL 9047894, at *9 (E.D.N.Y. Jan. 21, 2010) (granting summary judgment to employer on FMLA interference claim, where employee had failed to provide requested medical certification to employer).  However, the regulations provide for exceptions to the fifteen-day deadline, including where "it is not practicable under the particular circumstances [to submit the requested certifications,] despite the employee's diligent, good faith efforts."  29 C.F.R. 825.305(b).

Here, it is undisputed that Plaintiff did not submit her "fitness for duty" certification or her FMLA request paperwork by each designated deadline.  (Cmplt. Addendum (Dkt. No. 2) at 10-11 ¶¶ 4, 6 (stating that Plaintiff submitted the "fitness for duty" certification on May 14, 2019, one day after the May 13, 2019 deadline); see also id. at 12 ¶¶ 12-13 (stating that Plaintiff submitted her FMLA medical certification of serious health condition form on June 12, 2019, thirteen days after the May 31, 2019 deadline))

In the Complaint, Plaintiff pleads that – after Uregar provided her with the necessary FMLA form in an April 29, 2019 email – she requested an extension of the original May 10, 2019 deadline for submission of these completed forms.  (Id. at 10 ¶¶ 4, 6)  She scheduled an appointment as soon as possible with an orthopedist in order to obtain the necessary certification for the "fitness for duty" form (id.); submitted the "fitness for duty" form the same day that it was completed (id. at 11 ¶ 7); requested and scheduled a May 22, 2019 meeting with Uregar to discuss Plaintiff's request for FMLA leave and her return to work (id. at

15

11 ¶ 8); and provided Uregar with copies of her "doctor's notes" at the May 22, 2019 meeting.
(Id.)  Plaintiff further states that in Uregar's April 29, 2019 email she did not explain what forms
it was necessary for Plaintiff to complete (id. at 10 ¶ 4), and that Uregar did not provide this
information until May 22, 2019.  (Pltf. Mot. to Dismiss Opp. (Dkt. No. 41) at 2)  Two days after
Uregar informed Plaintiff that she was required to complete an FMLA leave form, Plaintiff
submitted a request with the Hospital to complete the necessary FMLA forms.  (Cmplt.
Addendum (Dkt. No. 2) at 12 ¶ 10)  Plaintiff further alleges that she "immediately" emailed
Uregar copies of her completed FMLA forms the same day that she received them.  (Id. at 12 ¶
13)  These allegations are sufficient to plausibly allege that Plaintiff made "diligent, good faith
efforts" to timely submit the necessary FMLA forms.  29 C.F.R. 825.305(b); see also Allen v.
Verizon Wireless, No. 12-CV-482 (JCH), 2013 WL 2467923, at *21 (D. Conn. June 6, 2013)
(finding similar allegations sufficient to survive a motion to dismiss).

   Judge Cave also concludes that Plaintiff has pled facts sufficient to show that
Defendants Uregar, Fuentes, and Clark are individually liable under the FMLA.  (R&R (Dkt. No.
46) at 36-39)  Individual liability exists under the FMLA where "the individual 'exercises
supervisory authority over [plaintiff]' and was responsible in whole or in part for the alleged
violation while acting in the employer's interest."  Mitura v. Finco Servs., Inc., No. 23-CV-2879
(VEC), 2024 WL 232323, at *7 (S.D.N.Y. Jan. 22, 2024) (applying an "economic reality" test
for purposes of determining individual liability under the FMLA) (quoting Noia v. Orthopedic
Assocs. of Long Island, 93 F. Supp. 3d 13, 17 (E.D.N.Y. 2015)); see also Graziadio, 817 F.3d at
422 (considering whether individual defendant "had the power to hire and fire the employees"
and "supervised and controlled employee work schedules or conditions of employment")
(internal citations and quotations omitted); Johnson v. A.P. Prods., Ltd., 934 F. Supp. 625, 628-

29 (S.D.N.Y.1996) (stating that FMLA liability "extends to all those who controlled in whole or in part [a plaintiff's] ability to take a leave of absence and return to [his or her] position") (internal quotation marks omitted).

As to Uregar, Judge Cave finds that the Complaint pleads that she provided Plaintiff with the necessary FMLA forms, and set deadlines for submission of those forms (Cmplt. Addendum (Dkt. No. 2) at 10 ¶¶ 4, 6, 11 ¶ 8); granted two extensions of the deadlines (the first at Plaintiff's request, extending the deadline to May 13, 2019, and the second at Uregar's initiative, extending the deadline to May 31, 2019) (id. at 10 ¶ 6, 12 ¶ 12); informed Plaintiff that her failure to submit the completed FMLA forms had resulted in her absence from work being "unauthorized" (id. at 11 ¶¶ 8, 9, 12 ¶ 12); directed College security officers to escort Plaintiff off the College campus on May 29, 2019 (id. at 12 ¶ 12); and responded to Plaintiff's June 12, 2019 email submitting the completed FMLA forms (id. at 12 ¶ 13).  (See R&R (Dkt. No. 46) at 36)  This Court agrees with Judge Cave that the Complaint plausibly alleges that Uregar exercised sufficient control over Plaintiff's FMLA leave application so as to be subject to individual liability under the FMLA.  See Emmons v. City Univ. of N.Y., 715 F. Supp. 2d 394, 419 (E.D.N.Y. 2010) (drawing "reasonable inferences" from the complaint that individual defendants "could have had some degree of control over the hiring, firing, or granting of FMLA leave to plaintiff"); Smith, 769 F. Supp. 2d at 476 (finding that a defendant was individually liable under the FMLA where the defendant "sent [p]laintiff home upon his return to work for failing to obtain unnecessary medical clearance"); Graziadio, 817 F.3d at 415, 422 (finding sufficient evidence at summary judgment to create a material issue of fact as to whether defendants were individually liable where they "handled any employee's return to work after FMLA leave [and any request] that required work accommodations").

As to Fuentes, the Complaint alleges that he was Plaintiff's direct supervisor; that he received her initial request for leave on April 17, 2019, and told her she "would have to be 'cleared'" by Human Resources "to resume working" on May 29, 2019; and that he "sent" Plaintiff "over to meet" Uregar at her office when Plaintiff returned to work that day.  (Cmplt. Addendum (Dkt. No. 2) at 9 ¶ 2, 12 ¶ 11)  These allegations are sufficient to demonstrate – for pleading purposes – that Fuentes was involved in the alleged violation of Plaintiff's FMLA rights.  See Smith, 769 F. Supp. 2d at 476 (finding individual liability where defendant "controlled [p]laintiff being called for and placed on attendance review").

As to Clark, the Complaint alleges that she "escorted" Plaintiff to the May 29, 2019 meeting with Uregar, at which Plaintiff was informed that her absence from work had been "unauthorized," and after which she was escorted off campus by security officers.  Clark also sent Plaintiff the July 9, 2019 termination letter.  (Cmplt. (Dkt. No. 2) 12 ¶ 12, 13 ¶ 14)  These allegations are likewise sufficient to state an FMLA interference claim against Clark.  See Augustine v. AXA Fin., Inc., No. 03 Civ. 8362 (RWS), 2008 WL 5025017, at *6 (S.D.N.Y. Nov. 20, 2008) (finding individual liability on FMLA claim where plaintiff's department head had "signed [a document] explain[ing] that Plaintiff's position was being eliminated"); Smith, 769 F. Supp. 2d at 476 (finding individual liability where defendant sent plaintiff a "letter improperly denying his request for an extension of his FMLA leave").

This Court finds no clear error in Judge Cave's conclusion that the Complaint states an FMLA interference claim as against all Defendants.

## IV.    DISCRIMINATION CLAIMS

### A.    Applicable Law

Federal, state, and local disability discrimination claims may be premised "both on adverse employment actions and on failures to accommodate."  McMillan v. City of New

18

York, 711 F.3d 120, 126 (2d Cir. 2013) (applying the ADA, the NYSHRL, and the NYCHRL);

Johnson v. NYS Off. of Alcoholism, No. 16-CV-9769 (RJS), 2018 WL 1353258, at *1

(S.D.N.Y. Mar. 13, 2018) (Rehabilitation Act).

Where an ADA disability discrimination plaintiff proceeds under a theory of

adverse employment action, plaintiff must plead facts demonstrating that "(1) [her] employer is

subject to the [relevant statute]; (2) [s]he was disabled within the meaning of the [relevant

statute]; (3) [s]he was otherwise qualified to perform the essential functions of [her] job, with or

without reasonable accommodation; and (4) [s]he suffered adverse employment action because

of [her] disability." See Woolf v. Strada, 949 F.3d 89, 93 (2d Cir. 2020) (ADA).

Where an ADA disability discrimination plaintiff is proceeding on a theory of

failure to provide reasonable accommodation, plaintiff "must satisfy the first three factors" and

demonstrate that her employer refused to make a reasonable accommodation. Id.

Plaintiff's disability discrimination claims under the Rehabilitation Act and the

NYSHRL for adverse employment actions and a failure to accommodate are governed by the

same standard as her ADA claims.[4]  See Modica v. New York City Dep't of Educ., No. 20-CV-

---

[4]  In August 2019, the NYSHRL was amended to provide that it "shall be construed liberally for
the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights
laws, including those laws with provisions worded comparably to the provisions of [the
NYSHRL], have been so construed." N.Y. Exec. Law § 300. "Courts have concluded that the
effective date of N.Y. Exec. Law § 300 is either August 12, 2019 (the signing date) or October
11, 2019 (the date other parts of the omnibus bill containing the amendment take effect)."
Brown v. Montefiore Med. Ctr., No. 18 Civ. 3861 (PGG) (KHP), 2023 WL 4763832, at *8 n.6
(S.D.N.Y. July 25, 2023) (collecting cases).

This August 2019 amendment does not affect Plaintiff's NYSHRL claims, however. Her
discrimination and retaliation claims are premised on conduct that took place between April 17,
2019 (date of her ankle injury) and July 9, 2019 (date of her termination). (See Cmplt.
Addendum (Dkt. No. 2) at 9 ¶ 2, 13 ¶ 14) "'[A] cause of action for discrimination under the
NYSHRL accrues and the limitation period begins to run on the date of the alleged
discriminatory act.'" Syeed v. Bloomberg L.P., 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021)

4834 (JMF), 2021 WL 3408587, at *5 (S.D.N.Y. Aug. 4, 2021) (collecting cases and applying

same standard to ADA, Rehabilitation Act, and NYSHRL claims).

      The NYCHRL "provides even greater protection against disability-based

discrimination[, however]." Jacobsen v. New York City Health & Hosps. Corp., 22 N.Y.3d 824,

834 (2014); Williams v. MTA Bus Co., 44 F.4th 115, 124-25, 137 (2d Cir. 2022) ("claims under

the NYCHRL," unlike its federal and state counterparts, "must be given an independent liberal

construction," and "the NYCHRL directs that the plaintiff's qualification for the position is not

an element of a prima facie case") (internal citation and quotation marks omitted).

      Under each statute, a threshold issue is whether the Complaint pleads facts

demonstrating that Plaintiff suffered from a disability.

      For purposes of the ADA, a plaintiff must plead facts showing that her "physical

impairment . . . substantially limits one or more [of her] major life activities." 42 U.S.C. §

12102(1)(A); see Hamilton v. Westchester Cnty., 3 F.4th 86, 92 (2d Cir. 2021) (same). Major

life activities include "caring for oneself," "performing manual tasks," "walking," and

"working." 42 U.S.C. § 12102(2)(A). The "substantial-limitation requirement in the definition

of 'disability' is not an exacting one." Woolf, 949 F.3d at 94 (citing ADA Amendments Act,

Pub. L. No. 110–325, § 2(b), 122 Stat. 3553, 3554 (2008)). When the major life activity

involved is "working," however, a plaintiff's "'inability to perform a single, particular job does

not constitute a substantial limitation.'" Id. (quoting Cameron v. Cmty. Aid For Retarded Child.,

---

(alteration in original) (quoting Fair Hous. Just. Ctr., Inc. v. JDS Dev. LLC, 443 F. Supp. 3d 494,
504 (S.D.N.Y. 2020)). Accordingly, Plaintiff's discrimination and retaliation claims accrued
before the amendments to the NYSHRL, and her ADA, Rehabilitation Act, and NYSHRL claims
are all subject to the same standard.

Inc., 335 F.3d 60, 65 (2d Cir. 2003).  Plaintiff instead "must show that the limitation affects the ability to perform a class . . . or broad range of jobs."  29 C.F.R. § 1630.

The NYSHRL defines "disability" more "broadly" than the ADA and does not require a plaintiff to plead facts showing that a major life activity is substantially limited by the impairment.  Sobhi v. Sociedad Textil Lonia Corp., No. 13 Civ. 8073 (AT) (MHD), 2014 WL 7474338, at *6 (S.D.N.Y. Dec. 30, 2014) (collecting cases).  The NYSHRL instead requires a plaintiff to plead facts showing a "physical . . . impairment resulting from anatomical . . . conditions which prevent[] the exercise of a normal bodily function or [that] is demonstrable by medically accepted clinical or laboratory diagnostic techniques."  N.Y. Exec. Law § 292(21).

The NYCHRL requires that a plaintiff plead facts showing a "physical, medical, mental or psychological impairment, or a history or record of such impairment."  N.Y.C. Admin. Code § 8-102.  "[P]hysical, medical, mental, or psychological impairment means . . . [a]n impairment of any system of the body; including, . . . the musculoskeletal system."  Id.  "The definition of disability under the NYCHRL . . . is broader than the definition of disability in the ADA [and the NYSHRL]."  Harris v. NYU Langone Med. Ctr., No. 12-CV-0454 (RA) (JLC), 2013 WL 3487032, at *26 (S.D.N.Y. July 9, 2013) (citation omitted).

Where plaintiff has sued an individual defendant, all three statutes require plaintiff to plead facts showing that that individual "actually participate[d] in the conduct giving rise to [the] claim of unlawful discrimination."  See Feingold v. New York, 366 F.3d 138, 157-59 (2d Cir. 2004) (internal quotation marks and citation omitted).

## B.    ADA and Rehabilitation Act Claims

Judge Cave recommends that Plaintiff's ADA and Rehabilitation Act disability discrimination claims against the College be dismissed with leave to amend.  Judge Cave concludes that Plaintiff's broken ankle does not qualify as a disability, because this type of injury

21

is "of a temporary nature and so [does] not implicate the protections of the ADA or the Rehabilitation Act." (R&R (Dkt. No. 46) at 17) This Court agrees that Plaintiff has not pled a disability under the ADA or the Rehabilitation Act, but under somewhat different reasoning.

As discussed above, Plaintiff's disability discrimination claim is premised on a broken ankle injury that she sustained on April 17, 2019. (Cmplt. (Dkt. No. 2) at 4); see also Cmplt. Addendum (Dkt. No. 2) at 9 ¶ 2) The Complaint alleges that Plaintiff was "released from [Bellevue H]ospital with [an orthopedic] boot and cane," and was instructed to "stay off [her] foot." (Cmplt. Addendum (Dkt. No. 2) at 9 ¶ 2) Less than six weeks after her injury, however, Plaintiff reported to work, albeit with the condition that she "not stand for prolonged periods of time or walk for prolonged periods of time." (Fitness for Duty Certification (Dkt. No. 36-1) at 2) That condition was to be lifted within eight weeks of her injury. (Id.; see Cmplt. Addendum (Dkt. No. 2) at 10 ¶ 6, 11 ¶ 11)

While "the duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity," Norman v. NYU Langone Health Sys., 492 F. Supp. 3d 154, 163 (S.D.N.Y. 2020), the Second Circuit has instructed that an ADA disability claim may not be dismissed "solely because [a plaintiff has] failed to plead that [her] injury was not temporary." Hamilton, 3 F.4th at 94. An impairment that is "sufficiently severe" may be covered by the ADA, even if it only "last[s] or [is] expected to last less than six months." Id. at 92-93 & n.5 (internal quotation marks and citations omitted) (citing Summers v. Altarum Inst., Corp., 740 F.3d 325, 329 (4th Cir. 2014) for the proposition that "the [ADA] 'imposes no . . . durational requirement for actual disabilities'"); see also Norman, 492 F. Supp. 3d at 163 ("'Impairments that last only for a short period of time are typically not covered [under

the ADA], although they may be covered if sufficiently severe.'") (quoting 29 C.F.R. §
1630.2(j)(1)(ix)).

Here, Plaintiff has not pled facts showing that her broken ankle injury was
"sufficiently severe" so as to be covered by the ADA.  While Plaintiff pleads that the Bellevue
orthopedist "told [her] to stay off [her] foot" (Cmplt. Addendum (Dkt. No. 2) at 9 ¶ 2), that
instruction does not demonstrate that Plaintiff was "substantially" restricted in a "major life
activity."  Guary v. Upstate Nat. Bank, 618 F. Supp. 2d 272, 275 (W.D.N.Y. 2009)
("[P]laintiff's broken ankle, which resulted in a single, twelve-week disability leave with no
alleged physical limitations thereafter, is not a disability for purposes of the ADA or the parallel
New York statute"); Smith v. Reg'l Plan Ass'n, Inc., No. 10 Civ. 5857 (BSJ), 2011 WL
4801522, at *5 (S.D.N.Y. Oct. 7, 2011) ("[m]erely alleging 'difficulty walking' does not pass
[the] threshold" of a disability under the ADA.  Indeed, Plaintiff states in the Complaint that she
was able to care for herself after the ankle injury; that she was able to commute to work on May
22 and May 29, 2019; and that she was able to take the "public bus."  (Cmplt. Addendum (Dkt.
No. 2) at 11-12 ¶¶ 8, 12); see Timmer v. City Univ. of New York, No. 20-CV-2554 (PKC), 2021
WL 3603465, at *11 (E.D.N.Y. Aug. 13, 2021) ("[T]he effect [of an injury] on a plaintiff's
ability to walk must be fairly significant before he or she will be determined disabled.") (citing
Potenza v. City of New York, 95 F. App'x 390, 391 (2d Cir. 2004)).

Because Plaintiff has not pled facts sufficient to demonstrate that her broken ankle
injury substantially limited a major life activity, her disability discrimination claims under the
ADA and the Rehabilitation Act will be dismissed.

C.    **NYSHRL and NYCHRL Claims**

The Complaint alleges NYSHRL and NYCHRL disability discrimination claims against all Defendants for adverse employment actions and a failure to accommodate Plaintiff's broken ankle injury.

1.    **Qualifying Disability**

Judge Cave concludes that Plaintiff has plausibly alleged a qualifying disability under the broader standards applicable under the NYSHRL and the NYCHRL.  (R&R (Dkt. No. 46) at 19)

While Defendants acknowledge that the NYSHRL and NYCHRL apply "broader [standards] than the ADA and Rehab[ilitation] Act," they object to Judge Cave's finding, arguing that because Plaintiff's broken ankle is a "temporary injur[y]," she is not entitled to relief under the state and city statutes.  (Def. Obj. (Dkt. No. 50) at 11)

This Court concludes that Plaintiff's broken ankle injury is "a physical . . . impairment" that "is demonstrable by medically accepted clinical or laboratory diagnostic techniques" under the NYSHRL.  See N.Y. Exec. Law § 292(21); (see also Cmplt. Addendum (Dkt. No. 2) at 9 ¶ 2 ("The ER physician x-rayed my left foot and determined that I had a broken ankle."); Fitness for Duty Certification (Dkt. No. 36-1) at 2 (orthopedist certifying that Plaintiff has a "serious health condition" affecting her ability to stand and walk for "prolonged periods of time"))

Plaintiff has also adequately alleged a "physical . . . impairment" of her "musculoskeletal system" under the NYCHRL.  N.Y.C. Admin. Code § 8-102.  See Parker v. Israel Disc. Bank of New York, Inc., No. 21-CV-7196 (VEC), 2024 WL 455220, at *10 (S.D.N.Y. Feb. 6, 2024) (finding that plaintiff's finger joint sprain was not a disability under Federal law, but concluding that this injury was a qualifying disability under the NYSHRL and

24

the NYCHRL); Arazi v. Cohen Bros. Realty Corp., No. 20-CV-8837 (GHW), 2022 WL 912940,

at *10 (S.D.N.Y. Mar. 28, 2022) ("whether an impairment is 'minor' or 'transitory' has no

bearing on Plaintiffs' NYCHRL claim for associational disability").

### 2.    Claims Premised on Adverse Employment Actions

Judge Cave recommends dismissing Plaintiff's discrimination claims predicated

on adverse employment actions, as to all Defendants, with leave to amend.  (R&R (Dkt. No. 46)

at 21, 41)

The Complaint alleges that Plaintiff suffered adverse employment actions as a

result of her broken ankle injury when (1) Uregar and Fuentes prevented her from returning to

work on May 29, 2019; and (2) Defendants terminated her employment on July 9, 2019.  (Cmplt.

Addendum (Dkt. No. 2) at 12 ¶¶ 11-12, at 13 ¶ 14)

In the context of a disability discrimination claim under the NYSHRL, an

"adverse employment action" is a "materially adverse change in the terms and conditions of

employment," including the "termination of employment."  Benzinger v. Lukoil Pan Americas,

LLC, 447 F. Supp. 3d 99, 118 (S.D.N.Y. 2020) (NYSHRL) (internal quotation marks and

citations omitted).  Under the NYCHRL, an adverse employment action takes place when

plaintiff "is treated less well," including in the event employment is terminated.  Mihalik v.

Credit Agricole Cheuvreux North Am., Inc., 715 F.3d 102, 114 (2d Cir. 2013) (citations

omitted).  Under both statutes, a plaintiff alleging such a claim must plead facts showing that she

suffered an adverse employment action "because of" her disability.  Benzinger, 447 F. Supp. 3d

at 121 (NYSHRL) (citing Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir.

1999)); Mihalik, 715 F.3d at 114 (NYCHRL).

Judge Cave concludes that the Complaint does not plead facts that give rise to an

inference that Defendants acted with discriminatory intent.  While Plaintiff points to alleged

the NYCHRL "'still requires a showing of some evidence from which discrimination can be inferred'") (quoting Ben-Levy v. Bloomberg L.P., 518 F. App'x 17, 19-20 (2d Cir. 2013)); Coleman v. N.Y.C. Dep't of Health & Mental Hygiene, No. 20 Civ. 10503 (DLC), 2022 WL 704304, at *5 (S.D.N.Y. Mar. 9, 2022) (dismissing NYCHRL claim in part because plaintiff "does not point to a comparator to show that [his employer] treated him less favorably than a similarly situated employee without a disability, recite any discriminatory comments, or otherwise plausibly plead a claim of discrimination").

As to Uregar, Fuentes, and Clark, the Complaint does not state a discrimination claim against them on the basis of an adverse employment action, because there is no "primary violation[] by [their] employer." Ross v. State of New York, No. 15-CV-3286 (JPO), 2016 WL 626561, at *9 (S.D.N.Y. Feb. 16, 2016); see also DeWitt v. Lieberman, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999) (under the NYSHRL and the NYCHRL "liability must first be established as to the employer [or] principal before accessorial liability can be found as to an alleged aider and abettor").

This Court finds no clear error in Judge Cave's analysis, and accordingly Plaintiff's disability discrimination claims against all Defendants will be dismissed to the extent they are premised on a theory of adverse employment action.

### 3.    Claims Premised on a Failure to Accommodate

Plaintiff's NYSHRL and NYCHRL disability discrimination claims also allege a failure to accommodate. Judge Cave recommends that Defendants' motion to dismiss be denied as to Plaintiff's NYSHRL and NYCHRL failure to accommodate claims. (R&R (Dkt. No. 46) at 24)

Plaintiff informed Fuentes on April 17, 2019, that she had broken her ankle. (Cmplt. Addendum (Dkt. No. 2) at 9 ¶ 2) On April 26, 2019, Plaintiff gave the same information

to Rosa Mateo, who works in the College's Human Resources department. (Id. at 9 ¶ 3) In connection with her broken ankle injury, Plaintiff asked for (1) "extended" medical leave from April 17, 2019 to May 29, 2019 (id. at 9-12 ¶¶ 2, 6-7, 11); and (2) permission to return to work at the College with "modified dut[ies]" on May 29, 2019 (id. at 10-11 ¶¶ 6-7; see Fitness for Duty Certification (Dkt. No. 36-1) at 2). According to the Complaint, Defendants did not offer Plaintiff the accommodation she sought, or any alternative accommodation. Instead, Defendants informed Plaintiff that she was on "unauthorized leave"; sent her home on May 29, 2019, when she returned to work; and terminated her employment on July 9, 2019. (Cmplt. Addendum (Dkt. No. 2) at 11-13 ¶¶ 8, 12, 14)

Defendants argue that the Complaint does not plead that the College was ever "put on notice that Plaintiff . . . suffered from a disability." (Def. Obj. (Dkt. No. 50) at 13-14) Judge Cave finds, however, that Plaintiff's "submission of the Fitness for Duty Certification on May 14, 2019" – in which Dr. Santiesteban recommends that Plaintiff "return to work" on May 29, 2019 "with modified dut[ies]" (Fitness for Duty Certification (Dkt. No. 36-1) at 2), "plausibly put the College on notice that [Plaintiff] was requesting accommodations." (R&R (Dkt. No. 46) at 22); see also Lareau v. Nw. Med. Ctr., No. 17-CV-81 (WKS), 2019 WL 2929793, at *4, *8 (D. Vt. July 8, 2019) (finding that fitness for duty report stating that plaintiff "should resume work part-time as tolerated" put employer "on notice of [plaintiff's seizures] disability").

Judge Cave also concludes that Plaintiff's request for a six-week leave of absence and two weeks of modified duties is a reasonable accommodation. (R&R (Dkt. No. 46) at 23) Plaintiff's request for a six-week leave was supported by a medical opinion that – if leave was granted – it was "reasonably likely to enable the employee to return to work." (Fitness for Duty

Certification (Dkt. No. 36-1) at 2); see also Graves v. Finch Pruyn & Co., 457 F.3d 181, 186 n.6 (2d Cir. 2006) (noting that district "courts . . . have concluded that a leave of absence may be a reasonable accommodation where it is finite and will be reasonably likely to enable the employee to return to work"); Robles v. Medisys Health Network, Inc., No. 19 Civ. 6651 (ARR) (RML), 2020 WL 3403191, at *10 (E.D.N.Y. June 19, 2020) (finding that plaintiff's leave request constituted a reasonable accommodation for pleading purposes where it specified "a definite period of time," and "would have allowed [plaintiff] to treat his symptoms, which, in turn, would have enabled him to return to work").

Defendants argue, however, that Plaintiff has not alleged that she "could have performed the essential functions of her job with a reasonable accommodation."  (Def. Obj. (Dkt. No. 50) at 14)  The Complaint pleads, however, that Plaintiff was able to perform the essential functions of her job as an office assistant prior to her injury, and it is plausible that she could have resumed those duties when she returned to work on May 29, 2019.  She had worked in the office assistant role for seventeen months prior to her injury and – according to Plaintiff – when she returned to work on May 29, 2019, she "showed up ready for work."  (Cmplt. Addendum (Dkt. No. 2) at 9 ¶¶ 1-2, 12 ¶ 11)

In sum, the Complaint adequately pleads that Plaintiff sought – and was denied – a reasonable accommodation.

As to individual liability, Judge Cave finds that the Complaint "plausibly alleges a direct failure-to-accommodate claim under the NYSHRL and NYCHRL against Ms. Clark, and claims against Mr. Fuentes and Ms. Uregar for aiding and abetting."  (R&R (Dkt. No. 46) at 41)

To survive a motion to dismiss, a complaint asserting NYSHRL and NYCHRL discrimination claims against an individual defendant must contain facts demonstrating that the

defendant "actually participated in the conduct giving rise to [the] claim of unlawful

discrimination," or that that defendant "aid[ed], abet[ted], incite[d], compel[ed] or coerce[d] the

doing of any of the acts forbidden under [the NYSHRL and NYCHRL]."  N.Y. Exec. Law §

296(6); N.Y.C. Admin. Code § 8-107(6); see Feingold, 366 F.3d at 157-59.

Applying these standards, this Court concludes that the Complaint plausibly

alleges that the individual Defendants failed to accommodate Plaintiff's broken ankle injury.

Plaintiff alleges facts showing that Uregar exercised control over her work

schedule and her conditions of employment, particularly with respect to her return to work on

May 29, 2019.  According to Plaintiff, Uregar told Plaintiff that her absence from work since the

date of her injury – April 17, 2019 – had been "unauthorized," and Uregar directed College

security officers to escort Plaintiff off the College campus on May 29, 2019, when Plaintiff

returned to work.  (Cmplt. Addendum (Dkt. No. 2) at 11 ¶¶ 8, 9, 12 ¶ 12)

As to Fuentes, Plaintiff alleges that when she returned to work on May 29, 2019

and reported to him, he told her that she had to meet with Human Resources.  As discussed

above, when Plaintiff reported to Human Resources – as Fuentes had directed – she was told that

her absence had been "unauthorized" and was escorted off the campus by security officers.  (Id.

at 9 ¶ 2, 11 ¶¶ 8-9, 12 ¶¶ 11-12)

As to Clark, Plaintiff alleges that she sent Plaintiff the July 9, 2019 letter

terminating Plaintiff's employment.  (Id. at 12 ¶ 12, 13 ¶ 14)

This Court finds no clear error in Judge Cave's recommendation that Defendant's

motion to dismiss should be denied as to Plaintiff's NYSHRL and NYCHRL disability

discrimination failure to accommodate claims.

## V.    RETALIATION CLAIMS

### A.    Applicable Law

To make out a prima facie case of retaliation under the FMLA, the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL, a plaintiff must allege facts that show "'(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'"  Littlejohn, 795 F.3d at 316 (quoting Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)) (NYSHRL); Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (ADA and Rehabilitation Act); Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004) (FMLA); United States v. N.Y.C. Dep't of Educ., 407 F. Supp. 3d 365, 402 & n.17 (S.D.N.Y. 2018) (NYCHRL).

"Protected activity" for purposes of a retaliation claim is any "'action taken to protest or oppose statutorily prohibited discrimination.'"  Natofsky v. City of New York, 921 F.3d 337, 354 (2d Cir. 2019) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000)) (ADA and Rehabilitation Act); Karupaiyan v. CVS Health Corp., No. 19 Civ. 8814 (KPF), 2021 WL 4341132, at *27 (S.D.N.Y. Sept. 23, 2021) (NYSHRL); N.Y.C. Dep't of Educ., 407 F. Supp. 3d at 402-03 (NYCHRL); see also Potenza, 365 F.3d at 168 (to allege protected activity under the FMLA, a plaintiff must allege that she "exercised rights protected under the FMLA").

In the retaliation context, an "adverse employment action" is "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  Benzinger, 447 F. Supp. 3d at 124 (NYSHRL) (quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015)); Behringer v. Lavelle Sch. for Blind, No. 08 Civ. 4899 (JGK), 2010 WL 5158644, at *15 (S.D.N.Y. Dec. 17, 2010) (FMLA and ADA);

Kaganovich v. McDonough, 547 F. Supp. 3d 248, 271 (E.D.N.Y. 2021) (Rehabilitation Act);

Karupaiyan, 2021 WL 4341132, at *27 (stating that under the NYCHRL, a plaintiff need merely

show that "as a result of [her] engaging in a protected activity, some action was taken that would

be reasonably likely to deter [her] from engaging in the activity again").

   Termination of employment is, of course, an adverse employment action for

purposes of a retaliation claim.  See Feingold, 366 F.3d at 156 (NYSHRL and NYCHRL); see

also Fox v. Costco Wholesale Corp., 918 F.3d 65, 71 (2d Cir. 2019) (ADA); Sista v. CDC Ixis N.

Am., Inc., 445 F.3d 161, 176 (2d Cir. 2006) (FMLA); Jackson v. City Univ. of New York, No.

05 Civ. 8712 (JSR), 2006 WL 1751247, at *3 (S.D.N.Y. June 23, 2006) (Rehabilitation Act).

  **B.**  **Analysis**

   Plaintiff contends that Defendants terminated her employment in retaliation for

(1) her May 14, 2019 request for certain "modifi[cations]" to her job duties when she returned to

work; and (2) her June 12, 2019 request for FMLA leave.  (See Cmplt. Addendum (Dkt. No. 2)

at 11-13 ¶¶ 7, 13, 15)

   Judge Cave concludes that the Complaint pleads facts sufficient to make out a

prima facie case of retaliation under the ADA and Rehabilitation Act as against the College, and

under the FMLA, the NYSHRL, and the NYCHRL as to all Defendants.  (R&R (Dkt. No. 46) at

26-30, 39)

   In objecting to Judge Cave's recommendation, Defendants argue that (1)

"Plaintiff's request for FMLA leave should not be found to qualify as protected activity,"

because she "fail[ed] to timely submit her FMLA documents" and "never suffered from" a

disability (Def. Obj. (Dkt. No. 50) at 18-19); and (2) there is no "causal connection" between

Plaintiff's "request to apply for temporary disability" on April 26, 2019 and "her termination for

job abandonment on July 9, 2019, 74 days later."  (Id. at 19-20)

As an initial matter, any request for FMLA leave qualifies as protected activity for purposes of a retaliation claim under the FMLA, the ADA, and the Rehabilitation Act, as long as the employee had a good faith basis for seeking leave under the FMLA.  Bernheim v. N.Y.C. Dep't of Educ., No. 19 Civ. 9723 (VEC), 2021 WL 4198126, at *3 (S.D.N.Y. Sept. 15, 2021) ("Plaintiff's request for FMLA leave was a protected activity sufficient to satisfy the first prong of a prima facie case of ADA retaliation"); Smith, 769 F. Supp. 2d at 470 (same as to FMLA retaliation claim); Martinez v. New York State Div. of Hum. Rts., No. 13-CV-1252 (GHW), 2015 WL 437399, at *14 (S.D.N.Y. Feb. 2, 2015) (applying same analysis to retaliation claims under the Rehabilitation Act, and explaining that "protected activity" extends to requests for "disability leave" in general).[5]

Plaintiff's broken ankle injury provided her with a good faith basis for seeking FMLA leave.  As to Defendant's assertion that Plaintiff did not suffer from a "disability" (Def. Obj. (Dkt. No. 50) at 18-19), the FMLA does not require proof of a "disability."  The Act instead requires that the employee seeking FMLA leave suffer from "a serious health condition that makes the employee unable to perform the functions of [her] position."  29 U.S.C. § 2612(a)(1)(D).  Here, of course, Plaintiff provided a certification from an orthopedist stating that she "began a period of medical care leave for . . . her serious health condition on April 17, 2019," which made her unable to "return to full, unrestricted duty" until June 12, 2019 (see Fitness for

---

[5]  A request for FMLA leave does not constitute "protected activity" for purposes of the NYSHRL and the NYCHRL.  See Benson v. Ruttura & Sons Constr. Co., Inc., No. 20 Civ. 853 (JS) (ST), 2021 WL 1238712, at *5 (E.D.N.Y. Mar. 31, 2021) (plaintiff's request to "tak[e] FMLA leave is not a protected activity under the NYSHRL") (citation omitted); Sutter v. Dibello, No. 18 Civ. 817 (ADS) (AKT), 2019 WL 4195303, at *22 (E.D.N.Y. Aug. 12, 2019) (same as to the NYCHRL).  Accordingly, Plaintiff's retaliation claims under the NYSHRL and NYCHRL will be dismissed to the extent they are premised on her June 12, 2019 request for FMLA leave.

Duty Certification (Dkt. No. 36-1) at 2); and she later obtained an FMLA certification of serious health condition form that makes her eligible for FMLA leave. (See Cmplt. Addendum (Dkt. No. 2) at 12 ¶ 13)

As to Plaintiff's retaliation claims under the ADA and the Rehabilitation Act, the success of those claims does not turn on whether Plaintiff suffered from a "disability" under those statutes. See, e.g., Taylor v. Lenox Hill Hosp., No. 00–CV–3773 (GEL), 2003 WL 1787118, at *6 (S.D.N.Y. Apr. 3, 2003) ("The fact that plaintiff was not actually disabled within the meaning of the ADA does not affect his retaliation claim."), aff'd, 87 Fed. App'x. 786 (2d Cir. 2004); Kelly v. New York State Off. of Mental Health, 200 F. Supp. 3d 378, 403 (E.D.N.Y. 2016) (noting, in the context of the Rehabilitation Act, a "claim of retaliation for protected conduct is a separate claim" from a discrimination claim and "does not depend on the success of the employee's disability claim") (citation omitted).

As to Defendant's argument that Plaintiff did not timely submit her request for FMLA leave, this Court concluded above that Plaintiff had made "diligent, good faith efforts" to comply with the deadlines set by Defendants. 29 C.F.R. 825.305(b). No more is required at the pleading stage.

As to Defendants' lack of causation argument, Plaintiff's relies on the temporal proximity between her protected activity and her termination. (Pltf. Mot. to Dismiss Opp. (Dkt. No. 41) at 6) Plaintiff's termination – the alleged adverse employment action – occurred a little over two months after Plaintiff had requested FMLA leave. "Although 'temporal proximity alone will not be enough to support [Plaintiff's retaliation] claim[s] on summary judgment,' it is sufficient at the pleading stage." Ahmad v. New York City Health & Hosps. Corp., No. 20 Civ. 675 (PAE), 2021 WL 1225875, at *27 (S.D.N.Y. Mar. 31, 2021) (quoting Huda v. New York

City Health & Hosps. Corp., No. 19 Civ. 11556 (AJN), 2021 WL 1163975, at *1 (S.D.N.Y. Mar.

26, 2021) (NYSHRL and NYCHRL retaliation claims)); see Clark v. Jewish Childcare Ass'n,

Inc., 96 F. Supp. 3d 237, 262 (S.D.N.Y. 2015) (causation for purposes of an ADA retaliation

claim can be demonstrated through proof "'that the protected activity was closely followed in

time by the adverse action'") (quoting Cifra v. GE, 252 F.3d 205, 217 (2d Cir. 2001)); Farooqi v.

New York Dep't of Educ., No. 19 Civ. 3436 (DLC), 2021 WL 1549981, at *4 (S.D.N.Y. Apr.

20, 2021) ("temporal proximity" may "give rise to" "an inference of retaliatory intent" under the

FMLA); see also Littlejohn, 795 F.3d at 320 (holding that, at the pleading stage, "causal

connection in retaliation claims can be shown . . . 'indirectly,' [through] 'protected activity [that]

was followed closely by discriminatory treatment'") (quoting Gordon v. N.Y.C. Bd. of Educ.,

232 F.3d 111, 117 (2d Cir. 2000)).  A two-month period between protected activity and an

adverse employment action is short enough to support an inference of retaliatory intent.  Ahmad,

2021 WL 1225875, at *27 (causation for purposes of NYSHRL and NYCHRL retaliation claims

was adequately pled where there was a two-and-half-month gap between protected activity and

adverse action); Salas v. New York City Dep't of Investigation, 298 F. Supp. 3d 676, 687

(S.D.N.Y. 2018) (same as to ADA retaliation claim); Behringer v. Lavelle Sch. for Blind, No. 08

Civ. 4899 (JGK), 2010 WL 5158644, at *15 (S.D.N.Y. Dec. 17, 2010) (same as to FMLA

retaliation claim).

          Accordingly, Defendants' motion to dismiss Plaintiff's retaliation claims will be

denied except to the extent that her NYSHRL and NYCHRL retaliation claims are premised on

her June 12, 2019 request for FMLA leave.

## CONCLUSION

          Judge Cave's R&R (Dkt. No. 46) is adopted as set forth above.  Defendants'

motion to dismiss is granted as to (1) Plaintiff's ADA and Rehabilitation Act claims against

Uregar, Fuentes, and Clark, which are dismissed with prejudice; and (2) Plaintiff's ADA and Rehabilitation Act disability discrimination claims against the College, which are dismissed with leave to amend. Defendants' motion to dismiss is also granted as to Plaintiff's NYSHRL and NYCHRL disability discrimination claims, but only to the extent those claims are predicated on adverse employment actions. Dismissal is with leave to amend. Defendant's motion to dismiss is also granted as to Plaintiff's NYSHRL and NYCHRL retaliation claims, but only to the extent that those claims are premised on her June 12, 2019 request for FMLA leave. Defendants' motion to dismiss is otherwise denied.

Any motion for leave to amend is to be filed by **September 20, 2024.** Any proposed Amended Complaint is to be attached as an exhibit to the motion.

The Clerk of Court is directed to terminate the motions (Dkt. Nos. 34, 50), and to mail a copy of this Order to pro se Plaintiff.

Dated: New York, New York
        August 21, 2024

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge